UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AMIRA HAMAD**, individually and on
behalf of similarly situated others,

     *Plaintiffs*,

**v.**                         **CASE NO.: 6:23-cv-01209**

**FRONTIER AIRLINES, INC.**, a Colorado
Corporation,

     *Defendants*.

_____/

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiff AMIRA HAMAD ("HAMAD"), individually and on behalf of similarly situated others (collectively "Plaintiffs"), by and through their undersigned counsel, against Defendant FRONTIER AIRLINES, INC. ("Defendant" or "FRONTIER"); and in support thereof alleges the following:

## NATURE OF CASE

FRONTIER is <u>not</u> a budget airline. FRONTIER does <u>not</u> have the lowest airfares. FRONTIER just breaks its fees into tiny little pieces and checkpoints to water down the appearance of what is actually an average airfare when combined and compared to the industry. Plaintiff brings this action, *inter alia*, to address misrepresentations and omissions committed by Defendant FRONTIER in connection with Defendant's business operations. FRONTIER falsely misled the Plaintiff and numerous other consumers, and continues to mislead consumers, into believing that they are purchasing low airfare, when, in fact, FRONTIER makes up whatever discount it purports to give consumers in fraudulent and unwarranted charges. In some instances, a carry-on piece of luggage costs as much as four (4) times the cost of a checked bag. FRONTIER's bait-and-switch

and "gotcha" tactics are designed to confuse, trick, and trap consumers to the public's detriment. As an example of this blatant arrogance, FRONTIER purports to allow one (1) "personal item" onboard "free" if it is no more than 14 inches tall, 18 inches wide, and 8 inches deep, but uses a measuring instrument at its gates that is drastically smaller than those dimensions, and charges consumers excessive fees to check items that do not fit inside the skewed bag sizer, even when the items are, undoubtedly, not in excess of those "personal item" dimensions that it advertises. FRONTIER even incentivizes its gatekeepers by providing them bonuses for each "personal item" that they charge at the gates. The actions and omissions of the Defendant constitute fraud, violate the Florida's Deceptive Trade Practices Act and Consumer Protections Act, and are in material breach of the understandings between FRONTIER and the Plaintiff and similarly situated consumers.

## JURISDICITON AND VENUE

1.      Subject matter jurisdiction is proper in this Court, under 28 U.S.C. § 1332(A)(1). Defendant is a corporation, which is domiciled in the State of Colorado. The representative Plaintiff is a citizen of the State of Florida.

2.      Personal jurisdiction and venue in this judicial district are proper in that the Defendant has continuous and systemic operations at Orlando International Airport ("MCO"), which is in Orlando, Florida, where the Defendant operates in a manner that violates the law consistent with Plaintiff's allegations herein. The conduct herein alleged, including the unfair and deceptive trade practices and the resulting harm, occurred in this judicial district.

## FACTUAL ALLEGATIONS

3.      The named Plaintiff HAMAD in this action is a citizen of the United States who resides in Florida.

4.     The Defendant FRONTIER does regular and continuous business in the State of Florida, within this judicial district.

5.     FRONTIER purports "to save you money on your flights," and "to not only offe[r] the lowest fares," and provides a "unique brand of Low Fares Done Right®," in which it "believe[s] The Sky is for Everyone®." [1]

6.     However, FRONTIER's advertised prices are misleading and the total cost to consumers flying with FRONTIER is not "the lowest fares," as advertised by the airline.

7.     FRONTIER purports to offer and maintain "the lowest" total prices to consumers compared to other airlines by utilizing its "unique brand of Low Fares Done Right®" ("LFDR") business model.

8.     However, FRONTIER's LFDR business model is nothing more than a bait and switch scheme designed to defraud consumers.

9.     FRONTIER does not make its fee structure clear to consumers at the time of purchase, especially when consumers purchase FRONTIER tickets through third party vendors.

10.     FRONTIER's fees are not conspicuously shown on its website or on the websites of third-party vendors, and consumers are often unaware of FRONTIER's large and plentiful fees until after they purchase a ticket that initially appeared attractive.

11.     FRONTIER intentionally hid fees from Plaintiff and other similarly situated consumers during the booking process in order to fraudulently induce sales.

12.     FRONTIER's practices are designed to trap consumers into paying fees that consumers do not expect to incur at the time of booking.

---

[1] https://www.flyfrontier.com/about-us/

13.    For instance, FRONTIER advertised to customers that one (1) personal item is included with each ticket and defines "personal items" as those that are not larger 14" height by 18" width by 8" depth (*i.e.*, 14"H x 18"W x 8"D), "including handles, wheels, and straps."[2]  (*See* FIGURE 1, below.)

FIGURE 1



14.    FRONTIER, without specificity, states that "items larger than the allowed dimensions [for Personal Items] are subject to an additional charge,"[3] but does not explain that the "additional charge" for those items is $100.00 at the departure gate.

---

[2] https://www.flyfrontier.com/travel/travel-info/bag-options/
[3] https://www.flyfrontier.com/travel/travel-info/bag-options/

15.     Not only does FRONTIER not adequately explain the nature of its baggage fees at the time of ticket purchase, but FRONTIER also displays a grossly skewed bag sizer at the gate that is smaller than the allowed 14"H x 18"W x 8"D dimension for Personal Items.

16.     Because FRONTIER does not clearly and conspicuously, or even accurately, disclose and display the included Personal Item measurements, consumers are unable to avoid the $100.00 baggage fee at the gate for "oversized" personal items. Essentially, FRONTIER deceives consumers as to what this fee is and tricks consumers into paying for personal items that were already included in the ticket price they paid for.

17.     FRONTIER, when confronted about the dimensions of the personal-item bag sizer at the gate, claims that the dimensions are the same as those advertised on its website (14"H x 18"W x 8" W), but FRONTIER intentionally limits the actions consumers can take on their website so that the customer whose bag qualifies as a "personal item" will appear to exceed the allowed size when they attempt to fit it in the shrunken display at FRONTIER's gates.

18.     Below is a photograph of HAMAD attempting to fit her TSA-approved "personal item" inside the bag sizer at MCO. (*See* FIGURE 2, below.)

FIGURE 2



19.     Plaintiff's bag dimensions are TSA-certified to be within the 14"H x 18"D x 8"W that FRONTIER advertises to be included in the purchase price of the ticket (*i.e.*, FRONTIER purports to allow one *free* personal item).

20.     Notably, FRONTIER does not identify the dimension of its bag sizer on the actual bag sizer, which, in effect, prevent the consumer from objecting to the bag sizer in-person and allows FRONTIER to induce the consumer into paying the additional fees under the duress of timely boarding their flight.

21.     Furthermore, FRONTIER fails to adequately explain to consumers before purchase that bags are more expensive at the gates.

22.     HAMAD, on her return flight, took her TSA-certified personal item to Spirit Airlines' gate, where she measured the bag using Spirit's "personal item" bag sizer. (*See* FIGURE 3, below.)

FIGURE 3



23.     As displayed in FIGURE 3, the size of HAMAD's personal item falls well within the dimensions advertised by FRONTIER as a "personal item" (*i.e.*, 14"H x 18"W x 8"D).

24.     Spirit's bag sizer purported to be the exact measurements that FRONTIER advertised online (*i.e.*, 14"H x 18"W x 8"D), and even had these dimensions displayed on the actual bag sizer for consumers to verify.

25.     FRONTIER engages in a pattern and practice of withholding certain material information regarding the total pricing of a flight until consumers have expended resources and are irreversibly committed to taking the flight, or, *e.g.*, carrying on a personal item.

26.     FRONTIER fails to specifically inform consumers about its hidden fees, and it falsely advertises that it offers "the lowest fares" as a standard product.

27.     Upon information and belief, FRONTIER provides inaccurate information to consumers about personal items and baggage fees, or both. Hidden within FRONTIER's online F.A.Q.'s is a definition for "Personal Items," as seen in <u>FIGURE 4</u>, below.

FIGURE 4

Home  »  Bags and Seats  »  Bags & Seats General Info

## What are the sizes and weight limits for bags?

**Personal Items:** Personal items can be no larger than 14" tall, 18" wide, and 8" long. Personal items *must* fit completely within the personal item portion of the bag sizer. Think purses, totes, computer bags, briefcases, and kids backpacks!

28.   FRONTIER fails to inform its consumers that "the personal item portion of the bag sizer" is **not** "14" tall, 18" wide, and 8" long"; in fact, FRONTIER hides the fact that its personal item portion of the bag sizers are much smaller than that. (*See*, *e.g.*, FIGURE 2, above. *Cf.* FIGURE 3, above.)

29.   FRONTIER misleads consumers about the cost and quality of its "included" personal items and the fact that personal items are more expensive than carry-ons at the gate.

30.   FRONTIER does not offer refunds for baggage fee.[4]

31.   FRONTIER's baggage fee structure is misleading and designed to trick consumers into paying the maximum amount of fees *at the airport*.

32.   FRONTIER charges different amounts for carry-on baggage and checked baggage at different stages. For instance, customers pay the least for baggage fees if they pay for the bag online before they get to the airport. Once a customer arrives at the airport, the baggage frees increase incrementally at different points in the airport, up to a $100.00 baggage fee for bags paid for at the gate. Consumers, however, are not advised in advances that they would be paying the said penalty for bags that FRONTIER advertises as "included" in the fares.

---

[4] https://faq.flyfrontier.com/help/bags-seats-general-info-how-much-does-frontier-charge-for-bags

33.     FRONTIER represented to HAMAD that the airfare amount was a clear representation of the total cost of the flight, but, after HAMAD purchased a round-trip ticket, she was presented with a plethora of additional unexpected fees that made her flight substantially higher than represented by FRONTIER at checkout.

34.     Because of FRONTIER's representations, the Plaintiff believed that the ticket she purchased would get her from points A-to-B and B-to-A for the advertised price. However, HAMAD had to pay additional unanticipated fees such as a high baggage fee.

35.     FRONTIER also represented to the HAMAD that they would be able to fit a 14"H x 18"W x 8"D personal item in the bag sizer, but when the Plaintiff was at the airport, the bag sizer was smaller than advertised.

36.     FRONTIER represented to Plaintiff that it provided the "lowest fares," but did not inform Plaintiff that her fairs did not accurately represent the additional fees she would have to pay at the airport.

37.     FRONTIER was not transparent with Plaintiff and other similarly situated consumers that despite claiming FRONTIER's fares included one personal item, the bag sizer was smaller than the dimension it advertised as "personal items."

38.     FRONTIER incentivized its employees, such as gatekeepers, to enforce the personal item portion of FRONTIER's bag sizer, by providing bonuses for each "oversized" personal item that they charged at the gate.

39.     FRONTIER is simply disingenuous about its baggage fees and what is included in the fares it charges to consumers.

**(Facts Relative to Plaintiff AMIRA HAMAD)**

40.     HAMAD purchased a round-trip ticket from MCO with FRONTIER in May 2023.

41.    FRONTIER represented to HAMAD a ticket rate through a third-party platform.

42.    HAMAD found this initial ticket price to be attractive and purchased the ticket.

43.    HAMAD later found that she would have to pay additional fees for baggage and other fees.

44.    HAMAD was prevented from properly measuring her personal item at the gate, contrary to FRONTIER's representations.

45.    HAMAD was unable to identify the use FRONTIER's website at the airport to resolve her disputed charges and was unable to identify the baggage fee that she was charged at the gate.

46.    HAMAD was told by FRONTIER's gatekeepers that the personal item bag sizer was 14"H x 18"W x 8"D, when it was in fact much smaller than that.

47.    The initial rate advertised by FRONTIER was misleading and induced HAMAD into purchasing the round-trip ticket with the Defendant.

48.    HAMAD would not have purchased the FRONTIER ticket if she knew the actual cost would be far more than represented by FRONTIER.

49.    In fact, when HAMAD realized the nature of the fraud, she confirmed her suspicions by showing that her personal item fit inside Spirit's personal item bag sizer, which had the same dimensions that FRONTIER purportedly had.

50.    HAMAD does not wish to continue doing business with a company that fraudulently induced her to purchase tickets and then trapped her into paying additional unanticipated fees based on a skewed bag sizer at the airport gate.

**(Facts Relative to the Similarly Situated Class)**

51.    This action is maintainable as a class action on behalf of the Plaintiffs.

52.     The Plaintiffs believe that the class that she means to represent is so numerous that joinder of all members is impracticable.

53.     The Plaintiffs assert that thousands of consumers have been, and are being, impacted by the Defendant's actions.

54.     The widespread impact of FRONTIER's actions is evidenced by social media posts referencing FRONTIER's baggage fees. (*See*, *e.g.*, F<small>IGURE</small> 5, below, showing two viral videos with over 400,000 combined "likes" on TikTok, as of May 31, 2023).

F<small>IGURE</small> 5

 

55.     The questions of law and fact common to the class, and the claims of HAMAD, are typical of the claims of the class of Plaintiffs.

56.     The Plaintiffs will fairly and adequately protect the interests of the class.

<u>COUNT I</u>

<b>DECEPTIVE OR MISLEADING PRACTICES IN VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 <i>ET SEQ.</i> ("FDUTPA")</b>

57.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph of this Complaint as though fully set forth herein, and further states:

58.     FDUTPA operates to protect consumers from unscrupulous business practices such as unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practice, in the conduct or trade of a business.

59.     FRONTIER engaged in conduct that was consumer-oriented and did so in a manner which was materially deceptive and misleading to consumers, and this conduct caused harm and damages to Plaintiffs.

60.     By way of example, FRONTIER made representations and omissions regarding its operations that fraudulently induced Plaintiffs to purchase a round-trip ticket with the Defendant.

61.     FRONTIER materially misled the Plaintiffs in the manner discussed above, including by failing to conspicuously disclose information regarding the total cost of the flight, the structure and amount of its baggage fees and other fees, the bag sizer, and baggage rates at the airport and gates, as discussed above, and that FRONTIER had the "lowest fares," as represented by FRONTIER.

62.     As a result of FRONTIER's [mis]representations and omissions, the Plaintiffs suffered losses, including funds expended for tickets, unforeseen fees, embarrassment, and inconveniences.

63.     The Plaintiffs seek punitive damages to deter FRONTIER and other airlines from continuing its deceptive and misleading business practices, which it continues doing as of the date of this filing, and to punish FRONTIER for its gross misconduct against the public, including the Plaintiff and similarly situated members of the class.

**COUNT II**

## BREACH OF CONTRACT, UNDER FLORIDA'S COMMON LAW

64.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph of this Complaint as though fully set forth herein, and further states:

65.     FRONTIER represented that the costs of a ticket would be a set amount when, in fact, FRONTIER charged Plaintiffs additional fees for services that a reasonable consumer would believe to be part of the bargain reached between the parties on the basis of the representations made.

66.     FRONTIER was also under a contractual obligation to provide the Plaintiffs with material information concerning the total cost of services, including but not limited to the total cost of the flight, the structure and amount of its baggage fees and other fees, and the specific size of the personal item portion of its bag sizers located at the gate.

67.     FRONTIER failed in its obligation to provide the Plaintiffs with this aforesaid information.

68.     After the Plaintiffs expended funds on FRONTIER's flight, FRONTIER uncloaked numerous hidden fees to the Plaintiffs that were unanticipated and unforeseen, let alone contradictory to its previous representations at the time the reservation was made.

69.     At the time of booking, the Plaintiffs were unaware that they would have to pay an additional fee for a seat on the plane with a personal item.

70.     Additionally, the structure of FRONTIER's baggage fees is and was confusing and designed to extract additional fees from consumers, including the Plaintiffs.

71.     FRONTIER advertised its fare in a misleading manner so that the Plaintiffs were fraudulently induced to purchase a round-trip ticket with FRONTIER.

72.     FRONTIER breached its agreement with the Plaintiffs when it charged the Plaintiffs unanticipated and/or hidden fees.

73.     FRONTIER intentionally locked the Plaintiffs into a non-refundable ticket purchase prior to disclosing all of the fees involved and waited until approximately thirty (30) minutes before boarding the flight to disclose the additional fees to the Plaintiffs.

74.     As a result of FRONTIER's [mis]representation and omissions, the Plaintiffs suffered losses, including funds expended on tickets, fees, embarrassment, and inconvenience, due to FRONTIER's fraudulent activity.

## COUNT III

## FRAUDULENT MISREPRESENTATION, UNDER FLORIDA COMMON LAW

75.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph of this Complaint as though fully set forth herein, and further states:

76.     While inducing the Plaintiffs to purchase tickets and throughout the contractual relationship between the parties, FRONTIER made numerous representations that were materially false, and FRONTIER made numerous material omissions.

77.     FRONTIER sold the Plaintiffs a round-trip ticket with the knowledge that what the consumer would ultimately pay would be significantly higher than the price represented.

78.     FRONTIER's misrepresentations and omissions included but are not limited to:

a.     Representing to the Plaintiffs to be "the lowest fares";

b.     Representing to the Plaintiffs that its "fares include one personal item" with a maximum size of 14"H x 18"D x 8"W;

c.     Advertising prices that were and continue to be misleading as to the total cost to consumers flying with FRONTIER;

d.      Engaging in deceptive trade practices with a bait and switch scheme;

e.      Maintaining a bag sizer that is smaller than its purported maximum dimensions for personal items;

f.      Failing to make it clear to consumers that a ticket does not include fees incurred after the ticket purchase;

g.      Deliberately failing to make its fee structure clear to consumers (Plaintiffs) at the time of purchase, especially when consumers (Plaintiffs) purchased tickets through a third-party vendor;

h.      Withholding certain material information regarding the total pricing of a flight until the consumers have expended resources and are irreversibly committed to taking the flight (*i.e.*, when they are in line for boarding the flight, approx. 30 minutes before departure); and,

i.      Failing to make necessary disclosures to the Plaintiffs of its baggage fee structure which is confusing and intended to extract significant hidden fees from consumers (Plaintiffs).

79.     FRONTIER knew, or acted with reckless disregard for the truth, as to all of the material misrepresentations that are alleged in this Complaint.

80.     FRONTIER knew, or acted with reckless disregard for the trust, as to all of the material omissions alleged in this Complaint.

81.     FRONTIER knew and intended that the Plaintiffs would rely on FRONTIER's false and misleading representations in the Plaintiffs' decisions to purchase a round-trip ticket with FRONTIER.

82.     FRONTIER knew that the Plaintiffs would rely on the information provided to them by FRONTIER in the Plaintiffs' decisions to purchase a round-ticket with FRONTIER and FRONTIER intended to influence the Plaintiffs' decisions by omitting material information.

83.     The Plaintiffs reasonably relied on FRONTIER's false and misleading representations in deciding to purchase round-trip tickets from FRONTIER.

84.     In deciding to purchase a ticket from FRONTIER, the Plaintiffs reasonably and justifiably believed that FRONTIER was providing all material information prior to purchasing, and the Plaintiffs' decisions were influenced by FRONTIER's omissions and misrepresentations.

85.     The Plaintiffs' reliance on FRONTIER's misrepresentations and/or omissions caused them significant, specific harm and damages, as alleged hereinabove.

86.     The Plaintiffs seek punitive damages to deter FRONTIER and other "budget" airlines from continuing its fraudulent practices, which it continues as of the date of this filing, and to punish FRONTIER for its gross misconduct against the public, including HAMAD and similarly situated members of the class (Plaintiffs).

## COUNT IV

### MISLEADING ADVERTISING, IN VIOLATION OF FLORIDA STATUTES § 817.41

87.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each preceding paragraph of this Complaint as though fully set forth herein, and further states:

88.     Florida laws provide a statutory cause of action for misleading advertising that gives the prevailing party a basis of relief to recover attorneys' fees and punitive damages, under Fla. Stat. § 817.41.

89.    Fla. Stat. § 817.41 makes it unlawful "for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." Fla. Stat. § 817.41(1).

90.    Such conduct "shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses." Fla. Stat. § 817.41(1).

91.    There is a "rebuttable presumption" that the named Defendant of any misleading advertisement "is responsible for such misleading advertisement or unlawful sale." Fla. Stat. § 817.41(4).

92.    Fla. Stat. § 817.40(5) defines "misleading advertising" as follows:

> The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, *and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services*.

Fla. Stat. § 817.40(5) (emphasis added).

93.    FRONTIER made or disseminated, or caused to be made or disseminated, before the general public of the state, "misleading advertisements," as defined by Fla. Stat. § 817.41.

94.    FRONTIER was the representor, because it made, disseminated, or causes same, on its website and its personal item portion of its bag sizer.

95.    FRONTIER made a misrepresentation of material facts, because FRONTIER did deceive the Plaintiffs and other consumers into paying for a personal item that was within the size

specifications by presenting the Plaintiffs with a bag sizer that was smaller than advertised on its website and/or arbitrarily enforced by gatekeepers.

96.     FRONTIER knew that the personal item portion of its bag sizer was smaller than 14"H x 16"W x 8"D and therefore knew of the falsity of the personal item size purportedly included in the fares.

97.     Even if FRONTIER did not actually know that its personal item portion of its bag sizer was smaller than advertised, it *should have known* of the falsity of the statement by measuring the bag sizer advertising and enforcing it before the public.

98.     For example, a simple measuring tape would have identified the falsity of FRONTIER's statements.

99.     FRONTIER incentivized its gatekeepers by providing them bonuses and/or commissions for each passenger that they were able to charge with a hidden baggage fee at the gates.

100.    FRONTIER intended that the herein alleged misrepresentation would induce the Plaintiffs to rely and act on it (the bag sizer) by arriving at the gate with personal items that were not larger than 14"H x 18"W x 8"D and ending having to pay the more expensive (undisclosed) baggage fees at the gate, last minute, before boarding their flight.

101.    FRONTIER knew that the Plaintiffs would not pay for their personal items online (at a lower cost) if FRONTIER advertised the size of personal items online.

102.    As a result of the Plaintiffs reliance on FRONTIER's representations, the Plaintiffs suffered injuries and/or damages.

## **PRAYER FOR RELIEF**

### **(AS TO ALL COUNTS)**

**WHEREFORE**, Plaintiff AMIRA HAMAD, individually and on behalf of similarly situated others (Plaintiffs), by and through their undersigned counsel, hereby respectfully requests this Honorable Court find in favor of the Plaintiffs, and against Defendant FRONTIER AIRLINES, INC.; and award the following relief against Defendant:

A.   Declaratory judgment, under Fla. Stat. § 501.211, that the Defendant's acts or practices violated the FDUTPA and enjoin the Defendants from continuing such acts or practices;

B.   Order that the Defendant discontinue the unfair and deceptive trade practices;

C.   Require the Defendant to disclose its fee structure *clearly and conspicuously*;

D.   Require the Defendant to disclose and clearly post its personal item dimensions on its bag sizers at the gates of the airports in which it operates;

E.   Require the Defendant to disclose and clearly post its baggage fees for each level of the contractual relationship, from online to in the airport and at the gate, and whether or not consumers can use mobile or online platforms at each stage;

F.   Require the Defendant to disclose the dimensions of its bag sizer online *clearly and conspicuously* online, in the airport, and at its gates (if different);

G.   Require the Defendant to clearly and conspicuously inform consumers that it is **not** the "lowest fare" and that personal items are **not** included in its fares;

H.   Order that the Defendant must reimburse the Plaintiffs for actual damages, under Fla. Stat. §§ 501.211(2) and 817.41.

I.   Order that the Defendant reimburse Plaintiffs for any and all ticket costs, costs that the Plaintiffs incurred related to the purchase of the Defendant's tickets, and any and all fees paid, including but not limited to baggage, seat, and cancellation fees;

J.     Order that the Defendant reimburse the Plaintiffs for all of the fees and costs paid to the Defendant, all travel and lodging expenses incurred as a result of the Defendant's fraudulent conduct, and all amounts paid to other carriers;

K.     Order that the Defendant pay all statutory fines, under the laws of Florida, for the willful conduct, in an amount of TEN THOUSAND DOLLARS ($10,000.00) for each violation of the FDUTPA, under Fla. Stat. 501.2075;

L.     Order that the Defendant pay for the Plaintiffs' emotional suffering and harm, as permitted by Fla. Stat. § 501.213;

M.     Order that the Defendant pay the Plaintiffs for all monetary and other losses, as permitted by Fla. Stat. § 501.213;

N.     Require the Defendant to pay statutory fines, costs of suit, and attorneys' fees, including those identified under Fla. Stat. § 501.2105;

O.     Punitive damages in an amount of not less than  ONE HUNDRED MILLION DOLLARS ($100,000,000.00), for the blatant, wanton, malicious, and intentional nature of the Defendant's gross misconduct, to deter the Defendant and other airlines from further similar conduct, as provided for under Fla. Stat. §§ 501.213 and 817.41(6); and,

P.     Grant the Plaintiffs any and all other and further relief as this Honorable Court may find just and proper.

## **DEMAND FOR JURY TRIAL**

### **(AS TO ALL COUNTS)**

**WHEREFORE**, the Plaintiff, AMIRA HAMAD, individually and on behalf of similarly situated others, by and through their undersigned counsel, hereby demands a trial by jury as to all issues so triable.

DATED: 6/29/2023                                   Respectfully submitted,

                                                                   /s/ Michael G. Mann
                                                                   **MICHAEL G. MANN, ESQ.**
                                                                   Fla. Bar No. 1020249
                                                                   The Cochran Firm Orlando, LLC
                                                                   605 East Robinson Street, Suite 330
                                                                   Orlando, Florida 32801
                                                                   Telephone: (407) 271-8590
                                                                   Facsimile: (407) 271-8059
                                                                   MMann@cochranfirmorlando.com
                                                                   Service@cochranfirmorlando.com
                                                                   *Attorney for Plaintiffs.*