UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AMIRA HAMAD, TAYLOR HARRINGTON,
ADRIENNE KRAFT, JOLENE YEADO,
SHARON PINE, TESS GAYNOR, CAMILLE
CRAWFORD, JOANNE HINRICHS, MASON
SPRAGUE, BEATA URBANOWICZ, STEFANI
GIMENEZ**, individually and on
behalf of similarly situated others,

     *Plaintiffs,*

v.                                                                 **CASE NO.: 6:23-cv-01209**

**FRONTIER AIRLINES, INC.**, a Colorado
Corporation,

     *Defendants.*

_____/

<u>**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION
COMPLAINT, STRIKE CLASS ALLEGATIONS AND JURY DEMAND, AND
MEMORANDUM OF LAW IN SUPPORT**</u>

Defendant Frontier Airlines, Inc. ("Frontier") respectfully moves for an order,

pursuant to Fed. R. Civ. P. 12(b)(6) and 26(f), dismissing the First Amended Class Action

Complaint ("FAC") filed by Plaintiffs Amira Hamad ("Hamad"), Taylor Harrington

("Harrington"), Adrienne Kraft ("Kraft"), Jolene Yeado ("Yeado"), Sharon Pine ("Pine"),

Tess Gaynor ("Gaynor"), Camille Crawford ("Crawford"), Joanne Hinrichs ("Hinrichs"),

Mason Sprague ("Sprague"), Beata Urbanowicz ("Urbanowicz") and Stefani Gimenez

("Gimenez") (collectively "Plaintiffs" or "Named Plaintiffs"), including their class action

claims for the reasons set forth below.  Additionally, Frontier moves pursuant to Fed. R.

Civ. P. 12(f)  for an order striking Plaintiffs' demand for a jury trial.

## **PRELIMINARY STATEMENT**

Frontier is an ultra-low-cost carrier that offers its customers low fares with the option to pay for additional services, including carry-on and checked baggage services. Plaintiffs' purported class action arises from the payment of a baggage fee for their respective oversized Personal Items[1] on various Frontier flights. *See* FAC ¶¶ 1-12 (Doc. 12). Plaintiffs allege that after purchasing their non-refundable tickets, Frontier charged them a fee at the boarding gate for their Personal Items, which they claim were included for "free" as part of their fare. *See id*. ¶¶ 20-37. Plaintiffs, however, acknowledge that Frontier repeatedly notifies its passengers that Personal Items larger than the allowed dimensions are subject to an additional charge**.** *Id.* ¶¶ 24-25. Despite this undisputed notice, Plaintiffs claim the charges were unexpected and that Frontier used baggage sizers at the gate that are smaller than the allowable measurements. *Id*. ¶ 26.

As a threshold matter, Plaintiffs waived any right to bring this action on behalf of a putative class pursuant to Frontier's Contract of Carriage ("COC"), which governs the rights of the parties. Plaintiffs' demand for a jury trial likewise must be stricken because they waived that right under the terms in the COC.

Plaintiffs' claims also are expressly preempted by the Airline Deregulation Act ("ADA"), which bars state law claims that relate to an airline's "price, route or service." 49 U.S.C. § 41713. Here, Plaintiffs' claims directly challenge Frontier's charging of a fee for baggage-related services and thus "relate to" both its "prices" and "services." These claims also relate to an area—baggage fees—that is pervasively regulated by the federal

---

[1]      A "Personal Item" is a carry-on bag that measures 14"H x 18"W x 8"D, including handles, wheels and straps. *See* Declaration of Myriah Monteneri ("Monteneri Decl.") (Doc. 14-1 at 2 ¶ 5; *Id.* at 64).

government, and thus, are impliedly preempted under the Federal Aviation Act ("FAA"), 49 U.S.C. §§ 40101 *et seq*. Specifically, Plaintiffs' claims fall within the exclusive purview of the U.S. Department of Transportation's ("DOT's") enforcement authority over consumer protection claims against air carriers. *See* 49 U.S.C. § 41712(a).

Moreover, the FAC fails to state any viable claim for relief against Frontier because*, inter alia*, (1) as the FAC admits, Plaintiffs had repeated notice that baggage fees could be imposed by Frontier, including at the gate; (2) Frontier's COC expressly informs passengers that that an oversized Personal Item could result in fees and that such determination lies within Frontier's discretion; (3) Plaintiffs' tort claims are barred by the independent tort doctrine; (4) their unjust enrichment claim is impermissibly duplicative of their breach of contract claim; (5) their warranty claims fail because Plaintiffs did not purchase "goods" from Frontier; and (6) Plaintiffs have not and cannot identify a specific provision in the underlying COC that was breached by Frontier. Finally, Plaintiffs Harrington and Pine's claims are barred because they failed to timely file their action.

## PROCEDURAL HISTORY

On June 29, 2023, Plaintiff Hamad filed a Class Action Complaint against Frontier alleging violation of Florida's Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq.*, *F.S.* ("FDUTPA"), breach of contract, fraudulent misrepresentation, and misleading advertising in violation of § 817.41, *F.S. See* (Doc. 1). On September 29, 2023, Plaintiffs filed the FAC, which joins 10 additional Plaintiffs and includes 8 additional causes of action. (Doc. 12). These additional causes of action include negligence, negligent misrepresentation, unjust enrichment, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability,

strict liability for misrepresentation, and fraud. *Id.* Each of the 12 causes of action must be dismissed with prejudice for the reasons stated herein.

## STATEMENT OF RELEVANT FACTS

Frontier is a domestic commercial airline based in Denver, Colorado.  *See* FAC, ¶ 12. Plaintiffs, residents of Colorado, Florida, Illinois, Texas and Wisconsin, all claim that they were improperly charged baggage fees by Frontier for their Personal Items, which Frontier determined in its discretion exceeded the allowable dimensions to be carried on the aircraft without charge. *Id*. ¶¶ 1–11.

### A.    Frontier's Policy Regarding Carry-On Personal Items

As the FAC recognizes, Frontier notifies passengers that they may carry on a Personal Item that measures "14"H x 18"W x 8"D including handles, wheels and straps" at no charge. *Id*.  ¶ 71.  Frontier further advises passengers:

> NOTE: **The size of your personal item will be checked during boarding. Items larger than the allowed dimension are subject to an additional charge**.

*Id*.  (Figure 8). The bag sizer at the airport further reiterates that the permissible Personal Item dimensions include "handle, wheels, and straps" and that "[u]nder seat stowage is not the measurement." *Id.* ¶ 97 (Figure 14). Plaintiffs do not dispute that Personal Items that do not meet the stated dimensions are subject to an additional charge. Plaintiff's likewise do not dispute that Frontier's dynamic pricing results in different fees being charged at different times in the booking and check-in process with the highest fees (*i.e.,* $99) for carry-on bags (which includes oversized Personal Items) being charged at the gate. *Id.*  ¶ 42. Frontier's website provides information on such charges as well. *See e.,g.,* (Doc. 14-1 at 64).

3

**B.    Frontier's Terms And Conditions And Contract of Carriage**

Any ticket for transportation with Frontier is subject to Frontier's Terms and Conditions ("T&C") and COC. (Doc. 14-1 at 2 ¶ 3 (attaching COCs in effect)).[2] The COC expressly provides that along with the COC's terms, additional terms and conditions on Frontier's website, fare rules, published schedules or printed on or in any ticket or ticketless travel authorization apply to all tickets issued for travel on flights by or for Frontier. *Id.*, *Introduction*. With regard to carry-on baggage, which includes Personal Items, the COC provides, in relevant part:

**13.  Carry-On Baggage**

A.     Passengers are permitted up to two carry-on items:

1)  One free personal item not larger than 8"x 14"x 18" (20 cm x 35 cm x 45 cm) *that must fit within the personal item portion of the bag sizer*.

2)  One carry-on item not larger than 10"H x 16"W x 24"L (25 cm x 40 cm x 114 cm) and weighing not more than 35 pounds that may be placed in the overhead compartment or under a seat.  *A fee for the carry-on item may apply based on the ticket type purchased…..*

3) The size and weight of an item may be measured using manual or automated methods. If a bag sizer is used, items must fit completely into the applicable portion, including any wheels and handles, and without the passenger using undue force, as determined *at Frontier's sole discretion. If an item exceeds allowable dimensions, the item may be gate-checked or considered to be a carry-on item, in each case to which the applicable fee will apply…..*

(Doc. 14-1 at 52–53 § 13 (emphasis added)). The COC further provides notice that Colorado law governs the COC, that passengers who bring contract-related claims have

---

[2]     Plaintiffs and Frontier entered into contracts for transportation which incorporate by reference the terms of Frontier's COC. The COC is central to Plaintiffs' claims, particularly as Plaintiffs invoke the COC (¶¶ 82-94) and Count II of the FAC pleads a breach of contract. Accordingly, the Court may consider the COC on this motion. *Basson v. Mortgage Elec. Registration Sys. Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018).

waived any class actions and right to a jury trial, and passengers must bring any action against Frontier within 6 months of the date of the alleged incident. *Id.* at 61–62 § 21.

### C.     Relevant Federal Aviation Regulations

DOT has pervasively regulated and issued consumer protection rules relating to the carriage of checked and carry-on baggage.[3] The Federal Aviation Regulations ("FAR"), for example, require an airline or a ticket agent to notify passengers on their websites and in any e-ticket confirmation of any potentially applicable baggage fees. *See* 14 C.F.R. §§ 399.85, 399.87. The FARs further require that an air carrier or ticket agent provide this information during the booking process, advising customers that additional airline fees for baggage may apply. Ticket agents may refer consumers to the airlines' websites. *See* 14 C.F.R. 399.85(b). The e-ticket confirmations by an airline or ticket agent must also include information regarding any free baggage allowance and baggage charges for carry-on and first and second checked bags; this may be done in text form, through a hyperlink to airline websites or the agent's website. 14 C.F.R. 399.85(c).

Section 253 of the FARs allows airlines to incorporate their COC by reference in a ticket or other written instrument. *See* 14 C.F.R. ¶ 253.49(a). A notice of such incorporation of terms may be included on or with a ticket, or other written instrument, given to the passenger. *Id*. at  ¶¶ 253.5(a). Each air carrier also is required to make the full text of their COC available for public inspection at its airport and city ticket offices, and, upon request, may mail or deliver a copy of such terms. *Id*. ¶¶ 253.4(b)(c).

### D.     Plaintiffs' Contracts For Transportation With Frontier

The majority of Plaintiffs purchased their tickets directly from Frontier, with only

---

[3]     *See* 76 Fed. Reg. 23165 (Apr. 25, 2011); 76 Fed. Reg. 45181 (July 28, 2011).

three Plaintiffs booking their tickets through on-line ticket agents (OTAs). Whether making their ticket purchases through Frontier or an OTA, it's undisputed that Plaintiffs' travel with Frontier is subject to the terms and conditions in Frontier's COC.

### 1.   Plaintiffs' Bookings Directly With Frontier

Plaintiffs Kraft, Yeado, Pine, Crawford, Hinrichs, Sprague, Urbanowicz and Gimenez all purchased their tickets for travel directly from Frontier.  (Doc. 14-1 ¶¶ 23–26, 28–31 (attaching copies of passengers' PNRs)).  In making their respective ticket purchases from Frontier, Plaintiffs received notice that their transportation was governed by Frontier's COC and expressly agreed to Frontier's T&C and COC.  *Id.* at 4 ¶ 12. Specifically, before purchasing their tickets, these Plaintiffs were required to click a button acknowledging that they were agreeing to Frontier's T&C and COC. *Id.*; *see also* FAC ¶ 82, Fig 13.  Moreover, the electronic ticket confirmation from Frontier to each of these Plaintiffs further stated that their transportation is subject to the terms and conditions in Frontier's COC. Doc. 14-1 at 5 ¶ 19.

### 2.   Plaintiffs' Bookings With OTAs

Plaintiff Hamad purchased her ticket through an on-line ticket agent, CheapOair. *Id.* at 6 ¶ 21. In the booking process with CheapOair, Plaintiff Hamad expressly agreed to CheapOAir's Term and Conditions, which incorporate by reference Frontier's COC.[4] See Declaration of Werner Kunz-Cho (Doc. 14-3 at 2 ¶¶ 4–7).

Plaintiff Harrington purchased his ticket through an on-line ticket agent, Expedia.

---

[4]    The FAC contains self-serving photos of Personal Items, which do not include the wheels and handles. *See, e.g.*, FAC ¶¶ 97-98, Fig. 14, 1. For instance, the Swiss-Gear website describes Hamad's bag as a "SWISSGEAR 7850 Checklite Underseat Luggage" and sets forth the "Product Dimensions" as "16 x 13.75 x 9," including "wheels and handles." These dimensions exceed Frontier's size requirements for a Personal Item.

*See* (Doc. 14-1 at 6 ¶ 22). In the booking process with Expedia, Plaintiff Harrington expressly agreed to Expedia's Term and Conditions, which incorporate by reference Frontier's COC. *See* Declaration of Carolynn Howsley (Doc. 14-4 at 1 ¶ 3; *Id*. at 5 § 1).

Plaintiff Gaynor purchased her ticket through an on-line ticket agent, Hopper, Inc. ("Hopper"). (Doc. 14-1 at 8 p 27). Hopper operates a travel portal for Capital One Travel ("Travel Portal"), where Capital One credit card holders can book airline flights. Declaration of Brian C. Carroll (Doc. 14-2 at 1 ¶ 2). In the booking process with Hopper, Plaintiff expressly agreed to the Travel Portal's Terms of Use, which incorporate by reference Frontier's COC. *Id.*at 2 ¶¶ 5–7.

## <u>STANDARD OF REVIEW</u>

A motion pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings.  In assessing the legal sufficiency of the allegations, the Court applies the pleading standard articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must …contain sufficient factual matter, accepted as true, to state  acclaim that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp*. 605 F.3d 1283, 1289 (11th Cir. 2010). While a court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits, a court may also consider documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). The enforceability of a class action waiver should be determined at an early stage in the litigation on a motion to dismiss and before discovery begins. *Roman v. Spirit Airlines, Inc*., 482 F. Supp. 3d 1305, 1311 (S.D. Fla. 2020), *aff'd,* No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 26, 2021).

Pursuant to Fed. R. Civ. P. 12(f), the Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Where a party knowingly and voluntarily waives a right to jury trial via contractual agreement, a court may strike a demand for jury trial from a complaint. *See, e.g.*, *Bank of Am. N.A. v. Florida Glass of Tampa Bay, Inc.,* No. 8:16-cv-02104, 2017 WL 11017883 (M.D. Fla. Aug. 18, 2017) (striking jury trial demand under Rule 12(f) motion).

**ARGUMENT**

**I.      PLAINTIFFS ARE BOUND BY THE COC AND WAIVED THEIR RIGHT TO BRING A CLASS ACTION AND DEMAND JURY TRIAL**

During the ticketing process, each Plaintiff agreed to be bound by Frontier's COC, which governs all aspects of Frontier's services and the rights of the parties. *See Roman*, 482 F. Supp. 3d at 1309 ("an airline's 'contact of carriage' is a federally regulated contract that governs the rights of the parties"). Indeed, Plaintiffs are bound by Frontier's COC pursuant to federal law, which allows airlines to incorporate contract terms by reference in their ticket or other written instrument. See 14 C.F.R. § 253.5(a) (an air carrier may "include[] on or with a ticket, or other written instrument given to a passenger… a conspicuous notice that . . . [a]ny terms incorporated by reference are part of the contract"); *Wolens*, 513 U.S. at 230 (airlines may "incorporate by reference in any ticket or other written instrument any of the terms of the contract of carriage"). In addition to providing such notice, airlines must make their COC available for public inspection and, upon request, mail or deliver a copy of such terms. 14 C.F.R. § 253.4(b)(c).

In an electronic world of "ticketless" travel and online booking, courts consistently enforce terms in the airline's COC provided that a passenger is notified, either through the online booking process or in a confirmation email (or other written instrument), that

the COC is being incorporated by reference. These terms include those related to optional services that that are offered to passengers in conjunction with their ticketed transportation. 14 C.F.R. § 399.85(d), 399.84(c). For example, in *Roman v. Spirit Airlines, Inc., supra,* a class action arising out of the airline's Shortcut Security Program which purported to expedite the security screening process for passengers, the court held the airline properly incorporated by reference the terms in the COC and also adequately disclosed information about the security program and its fees via links on the airline's website to its "Optional Services" page.  482 F. Supp. 3d at 1312.

Likewise, in *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147 (D. Mass. 2019), in ruling on Spirit Airlines Inc.'s ("Spirit") motion to dismiss, the court found notice of the COC was sufficient where: (1) the COC provision at issue was plainly labeled and in clear language; and (2) Spirit's online booking page explained "that by assenting to Spirit's terms and conditions by checking the relevant box, the passenger is agreeing to Spirit's COC" and where Spirit provided on the same page a link to the complete text of the COC to which the passenger agreed. *Id.* at 152.

Similarly, in *Dennis v. Delta Air Lines*, Inc., No. 10-CV-973, 2011 WL 4543487 (E.D.N.Y. Sept 29, 2011), the court found that a passenger who booked a Delta flight through an OTA was bound by Delta's COC because the OTA: (a) included a "'Notice of Incorporated Terms of Contract' that specifically states that air transportation 'is subject to the individual terms of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage," and (b) Delta's COC was "available for public inspection." *Id.* at *2.  *See also Capua v. Air Europa Lineas Aereas, S.A., Inc.,* No. 20-CV-61438-RAR, 2021 WL 965500, at *2, *6 n.9 (S.D. Fla. Mar. 15, 2021) (ticket

9

issued by expedia.com incorporated by reference airline's COC and vice versa).

Here, like in *Covino*, each Plaintiff who purchased their flights directly through Frontier clicked a button signifying that they acknowledged and agreed to Frontier's Terms and Conditions and COC, which is clear from the FAC. *See* Doc. 12 ¶ 82, Fig. 13; *see also* (Doc. 14-1 at 5 ¶ 18). Moreover, each Plaintiff received an electronic ticket confirmation email notifying the Plaintiff that the COC is incorporated by reference. *Id.* at 5 ¶ 19. Likewise, as in *Dennis*, when Plaintiffs Hamad, Harrington and Gaynor purchased their Frontier tickets through OTAs, each clicked a button signifying that they acknowledged and agreed to the respective OTA's Terms, which expressly incorporated Frontier's COC. *See* (Doc. 14-2 at 2 ¶¶ 5–7; Doc. 14-3 at 2 ¶¶ 4–7; Doc 14-4 at 1 ¶ 3; Doc. 14-4 at 5 § 1). Moreover, Frontier makes its COC available for public inspection. (Doc. 14-1 ¶ 11). Accordingly, under federal law, each Plaintiff was provided notice of, and is bound by, Frontier's COC.[5] Any allegations by Plaintiffs that they did not "agree" to Frontier's T&C and COC is belied by their own acceptance of such terms during the booking process. Moreover, whether Plaintiffs actually read the applicable terms before affirmatively assenting to them is of no moment. *See Hekmat v. U.S. Transp. Security Admin.*, 247 F. Supp. 3d 427, 435 (S.D.N.Y. 2017) (holding plaintiffs were on constructive notice of COC terms and it was irrelevant if they read them).

Frontier's COC, which is governed by Colorado law (Doc 14-1 at 62 § 21(K)),

---

[5]    "In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts." *See Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (finding enforceable clickwrap agreement where user affirmatively clicked "Submit"). Terms in such agreements are enforced regardless of whether plaintiff actually reads them. *Id.* at *4. Plaintiffs engage in semantics and erroneously contend that a clickwrap agreement requires that the button signifying assent use the language "I Agree." *See* FAC ¶¶ 83–94. This contention is not supported by the case law, as set forth above.

expressly bars class action lawsuits. More specifically, § 21(I), titled "No Class Action," unequivocally and unambiguously provides the following: "Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and *not as a Plaintiffs or class member in any purported class or representative proceeding.*" (emphasis added).

Under Colorado law, the class action bar is enforceable. *See Bonanno v. Quizno's Franchise Co., LLC*, Case No. 06-CV-02358, 2009 WL 1068744, *12 (D. Co. April 20, 2009) (enforcing a similar class action bar). Indeed, "Courts applying Colorado law start with the presumption that a contract clause is enforceable." *Id.* at *17. Likewise, the FARs do not prohibit such a class action bar. *See, e.g.*, *Bombin v. Southwest Airlines Co.*, 2023 WL 5832166, *11–12 (E.D. Pa. Sept. 7, 2023) (rejecting Plaintiffs' argument that a class action bar in Southwest Airlines' COC was prohibited by the FARs and enforcing same against Plaintiffs).

Furthermore, the Eleventh Circuit and other federal courts have recently enforced similar class action bars found in other airlines' COCs.[6] For instance, in *Roman v. Spirit Airlines, Inc.*, the Eleventh Circuit affirmed dismissal of plaintiffs' class action claims, holding that the contract of carriage sufficiently referenced the "Shortcut Security" service as an optional service that could only be offered to ticketed passengers who were parties to the COC.  No. 20-13599, 2021 WL 4317 318, at *1-2 (11th Cir. 2021).  Accordingly, the plaintiffs' claims fell within the scope of the class action waiver in the airline's COC (nearly identical to Frontier's), obligating them to bring their claims individually. *Id.* at *2.

---

[6]     *See also Hahn v. JetBlue Airways Corp.*, No. 1:21-cv-0687-NRM-LB, (Doc. 20) (E.D.N.Y. Aug. 25, 2022) (granting JetBlue's motion to dismiss Plaintiffs' class claims for breach of contract based on class action waiver in its COC).

Most recently, in *Bombin v. Southwest Airlines, Co.*, the court denied plaintiffs' motion for class certification in a breach of contract against Southwest Airlines, holding that the class action waiver language in Southwest's COC applied and was enforceable. 2023 WL 5832166 at *1. As held by the court, the plaintiffs were not adequate class representatives because "they agreed to terms preventing claims against Southwest in the form of a class action lawsuit." *Id.* at *11–12, 15.

Carry-on baggage and fees are directly addressed by Section 13 of the COC (Doc. 14-1 at 51 § 13). Accordingly, Plaintiffs' claims regarding fees for carry-on baggage clearly arise from and are governed by the COC, which bars class actions.[7] For this reason alone, Plaintiffs' class action complaint should be dismissed in its entirety.

Furthermore, pursuant to § 21(k) of the COC, Plaintiffs expressly agreed that "All right to trial by jury in any action, proceeding or counterclaim arising out of or in connection with this Contract is irrevocably waived." *Id.* at 62 § 21(k). Preliminarily, "[t]he right to a jury trial in federal courts in to be determined as a matter of federal law." *Johnston-Gebre v. IH4 Property Florida, LP*, No. 23-CV-61136, 2023 WL 6443096, *2 (S.D. Fla. Oct. 2, 2023). "A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." *Id.*

Plaintiffs' waiver was knowing and voluntary, and Plaintiffs have not, and cannot,

---

[7]     The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability. *Bonanno*, 2009 WL 1068744 at *12. Courts consider seven non-exclusive factors in in determining whether to enforce a contract provision. *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986). While Plaintiffs' allegations regarding the COC appear to muddle the separate issues of notice and unconscionability, Plaintiffs have not, and cannot, sufficiently allege facts to demonstrate unconscionability under the *Davis* test. The enforceability of Frontier's COC is further demonstrated by the routine enforcement of substantially similar COC's by other courts, as set forth above.

allege otherwise. First, the jury trial waiver provision in the COC is clear and conspicuous. See (Doc. 14-1 at 62 § 21(k)). Second, with regard to the parties' relative bargaining power, the appropriate question is whether there was a "gross disparity in bargaining power." *Johnston-Gebre*, 2023 WL 5443096 at *3. Such disparity only exists where a party "is unable to simply walk away if the terms are unacceptable." *Id.* That is not the case here. Third, Plaintiffs have not alleged any lack of sophistication that would "undermine whether [their] waiver was knowing and voluntary." *See id.* Finally, Plaintiffs have not alleged that they "wanted to consult with counsel but [were] precluded from doing so" in a way that would render their waiver involuntary. *See id.* at *4.

## II.   PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY THE ADA

Plaintiffs' state-law claims are preempted by federal law and must be dismissed. Federal law can preempt state law either expressly or by implication. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343 (11th Cir. 2005). Here, Plaintiffs' state-law claims are expressly preempted by the ADA because they relate to Frontier's "prices" and "services."

### A.   The ADA's Broad Construction Mandates Dismissal Of The FAC

Congress enacted the ADA in order "to deregulate[] domestic air transport." *Koutsouradis,* 427 F.3d at 1343. Congress' intent was to "help[] ensure transportation rates, routes and services that reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality."[8] *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 371 (2008) (citations omitted); *see Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1267 (11th Cir. 2018) (ADA

---

[8]    *Rowe* applied *Morales* in interpreting a similarly-worded preemption provision applicable to motor carriers. *See* 49 U.S.C. § 1450(c)(1).

places "maximum reliance on competitive market forces") (quotations omitted).

To ensure that states would not interfere with federal deregulation of the airline industry, an express preemption provision was included in the statute to prevent states from enacting or enforcing laws that would improperly regulate airline business practices. *See Morales*, 504 U.S. at 378-79. The ADA's preemption clause provides that:

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law ***related to a price, route, or service of an air carrier*** that may provide transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). The ADA's "related to" language is broadly construed to include state law claims "having a connection with or reference to airline '[prices], routes, or services'." *Morales*, 504 U.S. at 383-84; *see Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995); *Bailey,* 889 F.3d at 1268 (confirming ADA's "broad preemptive purpose"). Preemption is construed so broadly that it occurs even where the effect on prices, routes, and services is only indirect. *See Rowe*, 552 U.S. at 370. ADA preemption also extends to "laws of general applicability," to state laws that are "consistent" with federal laws, and to common law claims. *Morales*, 504 U.S. at 386-87; *see Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1430 (2014).

Significantly here, *Morales* struck down state attorney general guidelines that attempted to set standards regarding the content and format of *airline advertising*. 504 U.S. at 385. And *Wolens* held that the ADA preempted Plaintiffs' fraud claims under the Illinois consumer protection statute because the claims, which related to retroactive changes to the airline's frequent flyer program, sought to regulate the airline's prices and marketing practices. 513 U.S. at 225.  And, while *Wolens* recognized a narrow exception from preemption where a state-law claim sought recovery for the airline's alleged breach

of "its own, self-imposed undertaking" (*id*. at 228), only the parties' bargain could be enforced "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id*. at 233.  Applying the broad construction afforded the ADA, Plaintiffs' state law claims here are federally preempted and must be dismissed.

### B.   Plaintiffs' State-Law Claims Relate To "Prices" And "Services"

Plaintiffs' state law claims directly challenge Frontier's disclosure of its fees (i.e., its "prices")[9] for baggage and its baggage-related "services."

### 1.   Plaintiffs' Claims Improperly Regulate Frontier's "Prices"

The ADA "preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices."  *Buck v. Am. Airlines, Inc*., 476 F.3d 29, 34-35 (1st Cir. 2007) (ADA preempted state-law claims that air carrier wrongfully retained fees and taxes on nonrefundable tickets); *see Morales*, 504 U.S. at 387 (ADA preempted state attorney generals' fare guidelines which sought to regulate airline's fare advertising); *Sanchez v. Aerovias de Mex., S.A. de C.V.*, 590 F.3d 1027, 1030-31 (9th Cir. 2010) (claims based on an airline's tourism fee related to the airline's "prices"); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) (air carrier's cancellation penalty claim preempted because it is "obvious that canceled ticket refunds relate to rates").

Plaintiffs' claims explicitly refer to and directly challenge the baggage fee imposed on them for an oversized Personal Item. They contend that Frontier did not disclose the amount of the fee nor did it use a properly-sized bag sixer in measuring their Personal Items at the boarding gate. Such allegations plainly relate to Frontier's "prices" for baggage services. *See DiFiore v. Am. Airlines, Inc.,* 646 F.3d 81, 87-90 (1st Cir. 2011)

---

9      Because the ADA defines a "price" as a "a rate, fare or charge" (49 U.S.C. § 40102(a)(39)), it applies to these claims arising from baggage charges.

(fee for curbside check-in of baggage related to airline "price"); *Roman v. Spirit Airlines, Inc.,* No. 19-CIV-61461-RAR, 2020 WL 3303084, at *3-4 (S.D. Fla. Apr. 14, 2020) (ADA preempts state law claims challenging ancillary fees charged by airlines because they significantly affect "prices"); *Fernald v. Southwest Airlines, Inc.,* No. 11cv0453AJB (POR), 2011 WL 13254382, at *3 (S.D. Cal. Sept. 28, 2011) (finding $10 charge for Early Bird Check-In relates to airline's "prices").

By challenging and demanding a refund of their carry-on baggage fees, Plaintiffs' claims impact Frontier's baggage fee structure—an area in which airlines routinely compete—and run counter to the ADA's purpose. *See Bailey,* 889 F.3d at 1271-72 (holding ADA preempted plaintiff's attempt to impose statutory fee schedule that would reduce air ambulance carrier's prices); *Fernald,* 2011 WL 13254382, at *3 (noting that airline's higher prices for better seats is consistent with the competitive free market); *see also* DOT Proposed Rulemaking, *Refunding Baggage Fees for Delayed Checked Bags*, 81 Fed. Reg. 75347, 75347 ("Baggage fees, along with other ancillary fees, have become an increasingly important component of the airline industry's revenue structure.").

### 2.    Plaintiffs' Claims Also Directly Impact Frontier's Baggage "Services"

The transport of a passenger and their baggage is an integral part of an airline's transportation services. In *Branche v. Airtran Airways*, Inc., the Eleventh Circuit adopted a broad definition of the term "services" as including anything related to the incidents of air travel over which air carriers compete, including baggage handling. 342 F.3d at 1257..Because the carriage of baggage—both checked and carry-on—is fundamental to an airline's operations, it is precisely the type of "service" Congress intended the ADA to protect from state regulation. *See Koutsouradis,* 427 F.3d at 1344-45 (affirming ADA preemption of state law claims, including breach of contract, related to ground crew's

handling of baggage); *Miller v. Delta Air Lines, Inc.*, No. 4:11-cv-100990-JLK, 2012 WL 1155138 (S.D. Fla. Apr. 5, 2012) (finding breach of contract, unjust enrichment and FDUPTA claims arising from delayed baggage all preempted); *see also Brown v. United Airlines, Inc.*, 720 F.3d 60, 62 (1st Cir. 2013) (holding preempted unjust enrichment and tortious interference claims arising out of curbside baggage fees); *Hekmat,* 247 F. Supp. 3d at 432 (baggage transport is a service that "relates directly to air travel"); *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103, 1106 (W.D. Wash. 2011) (handling of baggage is "an activity central to the business of the airlines").

Setting baggage fees is not only an integral part of an airline's fee structure, it is an area where the airlines heavily compete in the market. There is no doubt consumers consider fees for ancillary services in making their flight arrangements. Allowing Plaintiffs to proceed with their state law claims would frustrate the forces of competition and also serve as a "means to guide and police [Frontier's] marketing practices" with respect to baggage services—a result prohibited by *Wolens*. 513 U.S. at 228 (ADA's purpose is "to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services").

Indeed, consumer protection statutes are consistently held preempted because they seek to regulate an airline's business practices. *Morales,* 504 U.S. at 389-90; *Wolens*, 513 U.S. at 228 (ADA preempted claims under Illinois consumer fraud statute); *Bailey,* 889 F.3d at 1268-69 (holding FDUPTA claims preempted); *Roman*, 2020 WL 3303084 at *4 (state law claims that "attempt to regulate [ancillary] fees via FDUPTA would … have a 'significant effect' on [airline's] prices" and are preempted).

**C.     Plaintiffs' Contract Claim Does Not Satisfy The *Wolens* Exception**

The narrow exception in *Wolens* for a breach of contract claim that arises from "the airline's alleged breach of its own, self-imposed undertaking" does not apply here. 513 U.S. at 229. Contract claims remain preempted if they enlarge or enhance the parties bargain based on state laws or policies external to the agreement. *Id*. at 233; *see Koutsouradis,* 427 F.3d at 1343-44 (affirming preemption of breach of contract claim which was not based on breach of any contract term, but rather on rudeness and disappointment with airline's baggage handling). Where a court would need to insert terms or look outside the contract to enforce an alleged meaning, it is plainly relying on state-law theories or policies to imply terms in the agreement and is not enforcing a "self-imposed obligation." *See, e.g.*, *Alatortev v. JetBlue Airways, Inc.,* No. 3:17-04859-WHO, 2018 WL 784434, at *6-7 (N.D. Cal. Feb. 7, 2018) (holding breach of contract claim preempted by ADA because it depended on claims outside the terms of the COC and enlarged the parties' agreement); *Schultz,* 797 F. Supp. 2d at 1106-07 (finding preemption where plaintiffs relied on implied contract theory in seeking a refund of baggage fees). This is precisely what Plaintiffs' claims do here.

Instructive is *Miller v. Delta Air Lines, Inc.*, where the plaintiff brought a putative class action seeking greater reimbursement for expenses she incurred as a result of her delayed bag. The plaintiff claimed that Delta failed to inform customers of their right to reimbursement for up to $3,300 for lost, damaged or delayed baggage and misled them to believe they were only entitled to $25-50 per day in reimbursed expenses. 2012 WL 1155138 at *2. She claimed the airline should have posted more prominent signs about the amount of reimbursement. The court, however, found that such claims "go far beyond the obligations" stipulated in the contract of carriage. *Id*. at *3. Nowhere did the contract

of carriage require the airline to post signage of a certain type and size in airports about the amount of reimbursement for delayed bags. To allow such a contract claim to move forward would improperly sanction regulation of an airline's advertising practices and baggage services. *Id.*

Similarly here, Plaintiffs' are seeking to impose greater disclosure obligations on Frontier than required by the COC. Frontier's terms are clear that a charge may be imposed for an oversized Personal Item, and, as a carry-on bag, such charges could be higher at the airport gate. (Doc. 14-1 at 5 ¶ 15);  FAC ¶ 42. Frontier's COC, website and passenger communications inform passengers about these fees.[10]  (Doc. 14-1 at 5 ¶¶ 15–16; *Id.* at 88). For Plaintiffs to succeed here, they would be inserting terms not contained in the COC and using state-law theories to bring their hidden fees claims. This is inconsistent with the *Wolens* exception and mandates dismissal of Plaintiffs' contract claims.  *See Koutsouradis,* 427 F.3d at 1343; *Miller,* 2012 WL 1155138 at *3; *Hekmat*, 247 F. Supp. 3d at 427.

The Eleventh Circuit recently addressed the *Wolens* exception in *Cavalieri v. Avior Airlines* C.A., 25 F.4th 843 (11th Cir. 2022), where the plaintiffs argued that the airline represented that the ticket price included all fees and taxes, but then subsequently charged the plaintiffs an Exit Fee in addition to the ticketed price. The court found the contract claim was not preempted because plaintiff adequately alleged that the airline breached the obligation to transport them at the ticketed price by charging an additional

---

[10]    Because Plaintiffs raise contract claims, Frontier rightfully provides the Court with its COC and other website terms that govern Plaintiffs' claims.

fee not included in the price or disclosed to them. *Id*. at 852.[11] In contrast, Plaintiffs here were repeatedly notified that baggage fees could be imposed for oversized Personal Items and they were even encouraged to purchase baggage services to avoid higher fees at check-in and at the gate. (Doc. 14-1 at 5 ¶¶ 15-16);The notice appears in Frontier's COC, on its website, and through hyperlinks during and after booking. *Id*. at 2 ¶ 5; 3 ¶ 6; 5 ¶¶ 15-16.

III.   **PLAINTIFFS' CLAIMS ARE IMPLIEDLY PREEMPTED**

Because Plaintiffs' state-law claims relate to an area pervasively regulated by the federal government, they also are impliedly preempted under the FAA. *See City of Burbank v. Lockheed Air Term., Inc.*, 411 U.S. 624, 633 (1973) (finding "pervasive nature" of federal regulation of aircraft noise meant FAA had "full control over airport noise" and preempted city's ordinance which attempted to directly regulate the same field). The language of the FAA expressly vests the Federal Aviation Administrator with authority to preempt subfields of air commerce by using its authority to develop regulations. By enacting comprehensive regulations concerning airline baggage fees, Congress plainly intended for the DOT alone to regulate airlines in this consumer protection area.

The manner in which airlines notify passengers of their baggage fees on their websites, e-ticket confirmations, and in their contracts of carriage all fall under the purview of the DOT.  *See* 49 U.S.C. § 41712 (DOT has plenary authority to "investigate and decide whether an air carrier ... has been or is engaged in an unfair or deceptive practice"); *Ginsberg*, 134 S. Ct. at 1433 (Congress gave DOT authority to punish unfair and

---

[11]    The court noted that the airline had viable defenses and the court below had not addressed on the motion to dismiss whether other notices regarding Exit Fees were disclosed on the website as part of the COC.

deceptive trade practices and to investigate complaints relating to frequent flyer programs); *Wolens*, 513 U.S. at 228 n.4; *Morales*, 504 U.S. at 379.

The DOT has pervasively regulated air carrier liability limits, notice requirements and refund policies for checked and carry-on baggage. *See* 14 C.F.R. §§ 254.4, 254.5. Airlines, *inter alia*, must notify passengers on their websites and in e-ticket confirmations of potentially applicable baggage fees. 14 C.F.R. §§ 399.85, 399.87. Ticket agents may refer consumers to the airlines' websites for specific baggage fee information.  14 C.F.R. 399.85(b).  These federal rules demonstrate incontrovertibly that the regulation of passenger baggage fees and related disclosures falls within DOT's exclusive authority. *See In re Korean Air Lines*, 642 F.3d at 694 ("federal regulation insures a uniform system of regulation and preempts regulation by the states' in a field where state-based variations 'would be confusing and burdensome")(citing H.R. Rep. 98-793, at 4 (1984)); Final Rule, *Defining Unfair or Deceptive Practices*, 85 FR 78707, 78708 (Dec. 7, 2020) (Congress expressly granted the DOT "the *exclusive authority* to prohibit unfair or deceptive practices of air carriers") (emphasis added).

Because Plaintiffs' claims, at their core, are all based on allegedly unfair and deceptive practices in disclosing baggage fees, they must be rejected as preempted, not only by the ADA, but by the FAA as well.[12] *See Bailey,* 889 F.3d at 1268-69 (recognizing DOT's power to enjoin unfair and deceptive practices by air carriers and affirming preemption of FDUPTA, FCCPA and other state law claims); *In re Korean Air Lines*, 642 F.3d at 696 (price-fixing conspiracy claims under state antitrust and consumer protection

---

[12]    As recognized by the DOT in its 2011 rulemaking, "States are already preempted from regulating in this area by the [ADA]." 76 Fed. Reg. at 23159.

statutes preempted by FAA); *In re JetBlue Airways Privacy Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) (FAA preempted claims under state consumer protection laws which represented "a direct effort to regulate" the airline's communications with its customers).

## IV.   PLAINTIFFS' CLAIMS ARE FACIALLY DEFICIENT

### A.   Plaintiffs' Express Contract Claim Fails (Count II)

Plaintiffs purport to bring a claim for breach of contract, alleging that Frontier subjected itself to a contractual obligation "to provide the Plaintiffs with material information concerning the total cost of services . . .." FAC ¶ 404. Frontier, Plaintiffs claim, breached this obligation by failing to "provide the Plaintiffs with this aforesaid information" and by "[charging] the Plaintiffs' unanticipated and/or hidden fees." *Id*. ¶¶ 405, 410. However, the actual contract in place between Plaintiffs and Frontier—the terms of which are stated in the incorporated COC, website, and notices—refutes such a claim.

Frontier's COC expressly contemplates that passengers may incur baggage fees for oversized personal items at the time of boarding, and its website sets forth the various charges. *See* (Doc. 14-1 at 2 ¶ 5). Plaintiffs cannot claim surprise.[13] The purported misrepresentation and surprise upon which Plaintiffs base their contract claims is simply unfounded in light of Frontier's COC. The speciousness of Plaintiffs' purported breach claim is further evidenced by their failure to identify any specific contract provision allegedly violated by Frontier. *See, e.g., Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, *4 (S.D. Fla. Dec. 17, 2014) (requiring identification of the allegedly breached provision).

---

[13]      To that end, the majority, if not all Plaintiffs, had flown with Frontier previously and thus had prior experience with Frontier's carry-on baggage practices and policies. (Doc. 14-1 at 96, 129, 138, 159, 170, 181, 203, 214, 224  (PNRs indicating recurring customer)).

In sum, and somewhat ironically, Frontier's contract with Plaintiffs (the COC) explicitly provides the very notice Plaintiffs allege Frontier failed to give them. *Arencibia*, 533 F. Supp. 3d at 1186 ("When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Moreover, several Plaintiffs accepted refunds or vouchers as compensation for their claims and, accordingly, cannot allege damages, actual or otherwise.[14] *See, e.g.*, (Doc. 14-1 ¶¶ 22, 25, 28–30).

### B.  Plaintiffs' Tort Claims Are Barred by the Independent Tort Doctrine

Plaintiffs' claims sounding in tort—Counts III, V, VI, XI, and XII—must be dismissed pursuant to the independent tort doctrine.[15] Plaintiffs purport to allege a breach of contract claim, at the heart of which are Plaintiffs' allegations that Frontier breached the contract by: 1) failing to provide Plaintiffs with pricing information; and 2) charging Plaintiffs a fee not contemplated by the contract (i.e. the ticket)—the same purported conduct upon which Plaintiffs purport to base their claims sounding in tort (and all other claims, for that matter). *See, e.g.* FAC ¶¶ 418, 445–46, 458, 508, 519. Causes of action for tort will not lie where the allegedly tortious conduct is not separate and distinct from the breach of contract itself. *See, e.g.*, *Inspirations Nevada LLC v. Med Pro Billing, Inc.*, 2021 WL

---

[14]    All claims in the FAC contemplating damages as an underlying element also fail as to these Plaintiffs. The fact that several Plaintiffs accepted vouchers or refunds reflects the highly individualized nature of these claims, which clearly do not meet Rule 23's pleading requirements. Each Plaintiff's claim calls for a detailed factual analysis and unique evidence regarding, *inter alia*, the dimensions of their bag, the airport and gate where they were charged, the gate agent they interacted with, and whether they were compensated.

[15]    It is unclear whether "Strict Liability for Misrepresentation" is a viable cause of action under Florida law. Furthermore, for all claims arising from alleged fraud, Plaintiffs have failed to meet the heightened-pleading standard of Rule 9(b). *See Smith v. Boston Red Sox*, No. 2:23-CV-68, 2023 WL 6376381, *3 (M.D. Fla. Sept. 29, 2023) (noting Rule 9(b) requires a plaintiff to allege the precise statements, documents, or misrepresentations made as well as the time and place of and person making them).

2156677, *5–6 (S.D. Fla. May 26, 2021) (citations omitted).   Even where, as here, allegations of tortious conduct relate to pre-contract dealings, "where the alleged [tortious conduct] is inseparable from the essence of the parties' agreement, the independent tort doctrine applies and the parties are limited to pursuing their rights in contract." *Id.*

### C.   Plaintiffs' Unjust Enrichment Claim Is Barred

Similarly, "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists regarding the same subject matter." *Id.* at *7. Again, Plaintiffs' allegations giving rise to their unjust enrichment claim are duplicative of their allegations regarding breach of contract. In sum, Plaintiffs' allege they were wrongfully charged a fee—the same conduct they allege constituted Frontier's breach of contract.

### D.   Plaintiffs' Breach of Warranty Claims Fail

Plaintiffs' warranty claims (Counts VIII, IX, and X) must be dismissed because airline tickets and ancillary baggage services are not "goods" as contemplated by Florida's Uniform Commercial Code ("UCC"). Warranty causes of action under the UCC may only arise from the sale of goods. *See, e.g., Armadillo Dist. Enterprises, Inc. v. Hai Yun*, 142 F. Supp. 3d 1245, 1253–1255 (M.D. Fla. 2015) (noting that sale of goods is the first element in breach of express warranty claim and that an implied warranty is applicable to the sale of goods). The sale of airplane travel, however, is not a sale of goods under the UCC. *See Allied Shelving & Equipment v. National Deli, LLC*, 154 So. 3d 482, 482 (Fla. 3d DCA 2015) (citing definition of "goods" under Florida's UCC).

### VII.   PLAINTIFFS HARRINGTON AND PINE'S CLAIMS ARE BARRED

Plaintiff Harrington was charged a baggage fee at the gate on March 12, 2023,

and Plaintiff Pine on January 11, 2023.  (Doc. 14-1 at 6 ¶ 22; 7 ¶ 26).  Because they filed their action on September 29, 2023—more than six months after being charged baggage fees—their claims must be dismissed with prejudice pursuant to § 21(J) of the COC. *See Roman,* 482 F. Supp. 3d at 1316 (dismissing with prejudice claims filed after COC's 6-month limitation period); *Covino*, 406 F. Supp. 3d at 152-53 (same).

## CONCLUSION

For the reasons set forth above, Frontier requests an Order: (1) dismissing the Class Action as Plaintiffs waived any right to bring such claims; (2) striking the jury demand which also was waived; (3) dismissing the causes of action in the FAC as preempted by federal law; and (4) dismissing the claims of Plaintiffs Harrington and Pine as time-barred. Defendant submits that the dismissal should be with prejudice because any amendment would be futile, as no amendment can cure the inherent deficiencies that Plaintiffs' claims are expressly preempted by the ADA, are impliedly preempted by the FAA, and are not otherwise cognizable in law or fact.

Respectfully submitted October 23, 2023.

/s/ *Suzanne E Gilbert*
Suzanne E. Gilbert, Esq.
Fla. Bar No. 94048
Kristin N. Royal, Esq.
Fla. Bar No. 0125734
HOLLAND & KNIGHT, LLP
200 South Orange Avenue, Suite 2600
Orlando, FL 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288
suzanne.gilbert@hklaw.com
kristin.royal@hklaw.com
*Counsel for Defendant Frontier Airlines, Inc.*

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

I hereby certify that pursuant to Local Rule 3.01(g), Kristin N. Royal, Counsel for Defendant Frontier conferred with Mike Mann, Counsel for Plaintiffs, including by phone on October 20, 2023, and Plaintiffs do not agree to the relief sought in this motion.

<u>/s/ *Suzanne E. Gilbert*</u>
Attorney

26