UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMIRA HAMAD, et al.,

v.                                            CASE NO.: 6:23-cv-01209-WWB-LHP

FRONTIER AIRLINES, INC.,

_____/

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby respond in opposition to Defendant's Motion to Dismiss ("MTD") Plaintiffs' First Amended Class Action Complaint ("FAC"), and Motion to Strike Class Allegations and Jury Demand (Doc. 16), and incorporate herewith Plaintiffs' Memorandum of Law in Opposition, and so further state as follows:

### MEMORANDUM OF LAW

### I.    INTRODUCTION

This case is straight forward. Frontier lied to Plaintiffs and millions of others, and it profited $99 per incident, which it shared with its gate agent goons. Through trickery, coercion, and duress, Plaintiffs and millions of others were charged subsequent, additional, and fraudulent fees for their Personal Items (bags not larger than 14"x18"x8"). As alleged in the First Amended Complaint ("FAC"), **Frontier charged Plaintiffs $99.00 for their Personal Items that were __not__ oversized**. Now, Frontier presents this mysterious and questionable "Contract of Carriage" ("COC") as a golden ticket of immunity. However, the COC is not part of the pleadings, and Plaintiffs have plausibly pleaded that the COC was inconspicuously noticed (hidden from them), until Frontier's

answer to the FAC. Therefore, Frontier cannot use the COC against Plaintiffs, and Frontier's Motion to Dismiss (Doc. 16) should be denied in its entirety.

## II.   <u>STANDARD OF REVIEW</u>

A complaint should be dismissed only if it does not contain sufficient allegations of fact to sustain a cause of action that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). The Court must accept all the complaint's allegations as true, construing them in the light most favorable to the Plaintiffs. <u>Pielage v. McConnell</u>, 516 F.3d 1282, 1284 (11th Cir. 2008). Only a short and plain statement entitling the pleader to relief is required. Fed. R. Civ. P. 8(a)(2). A complaint should be dismissed only if it "cannot state any set of facts that would entitle the plaintiff to relief." <u>Hertz Corp. v. City of N.Y.</u>, 1 F.3d 121, 125, 1993-2 Trade Cas. (CCH) P70, 343 (2d Cir. 1993). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 198, 2001-2 Trade Cas. (CCH) P73, 518 (2d Cir. 2001) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S 232, 236, 40 L.Ed.2d 90, 94 S. Ct. 1683 (1974)). Where a claim sounds in fraud, Rule 9(b) must be satisfied in addition to Rule 8 standard. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally." Fed. R. Civ. P. 9(b). To meet particularity standard in fraud claims, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the

content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." _W. Coast Roofing & Waterproofing v. Johns Manville, Inc._, 287 F. App'x 81, 86 (11th Cir. 2008).

### III.   ARGUMENT

#### A.   _CONTRACT FOR CARRIAGE IS NOT ENFORCEABLE._

The motion to dismiss stage is inappropriate for Frontier's notice argument to be addressed, because it is a factual dispute and the 12(b)(6) motion tests only the pleadings. _Cavalieri v. Avior Airlines C.A._, 2022 WL 19919671, at *2 (S.D. Fla. Nov. 14, 2022) (slip copy) ("to date, there is no case where this notice inquiry has been addressed in a motion to dismiss"). _See also_ _Cox v. Spirit Airlines, Inc._, 341 F.R.D 349, 364-35 (E.D.N.Y. 2022) (factual dispute existed even at summary judgment stage; denying summary judgment as to whether Spirit complied with the notice requirements of Part 253 for its airline tickets). The "Court is only _required_, however, to construe the Complaint's allegations in the light most favorable to the plaintiff." _Cavalieri_, at *2 (original emphasis) (citations omitted). It would be inappropriate to credit Frontier's proffered justification for its position _and_ use that same proposition as a basis for preemption. _Parise v. Delta Airlines, Inc._, 141 F.3d 1463, 1466 (11th Cir. 1998) ("it is Delta's answer to the complaint that appears to provide the asserted ground for preemption"). "The court is not required, however, to accept as true _legal conclusions_ dressed up as factual allegations." _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added).

Plaintiffs never agreed to be bound by the COC. That is a notion made up by Frontier in its Motion. (Doc. 16, at 9). The material terms of the parties' contract do not incorporate the mysterious COC, and **Plaintiffs** are not "bound by Frontier's COC,

*pursuant to federal law*" (Doc. 16, at 9); **Frontier** is bound to the federal law, which "allows airlines to incorporate contract terms" according to certain requirements that Frontier must establish in very specific ways. *See* 14 C.F.R. § 253.5(a). For instance, the notice must be "a conspicuous notice." § 253.5(a). "[A]n air carrier may not claim the benefit as against the passenger of, and *the passenger shall not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part*." § 253.4(a) (emphasis added). Significantly, the FAC, which must be taken as true, more than sufficiently allege Frontier's purported "notice" was not conspicuous. Plaintiffs allege that Frontier's agents ignored Plaintiffs appeals and did not provide a copy of the COC at the airport. This alone defeats Frontier's argument for enforcing the COC, pursuant to § 253.4(b)(c).[1]

Importantly, Frontier never provided *any disclosure whatsoever* about the COC and its material terms that it now seeks to enforce. This is distinguishable from *Roman v. Spirit Airlines*, where Spirit provided links to the terms page. (Doc. 16 at 10). Furthermore, Frontier utterly failed to show how the COC provision was "plainly labeled and in clear language." (*See* Doc. 16, at 10). Most significantly, however, is the fact that Frontier chose *not* to provide an affirmative way for Plaintiffs and similarly situated others to assent to the "terms and conditions by checking a relevant box." Frontier's own case law disagrees with its position, finding that the plaintiffs in that case agreed to Spirit's COC "by checking the relevant box." *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147, 152 (D. Mass. 2019).

No such checked box appears on Frontier's online ticketing process. Therefore, Frontier has failed to show how Plaintiffs assented to the COC without assenting to

---

[1] Note, as alleged, Frontier actually has a paywall between its passengers, including Plaintiffs, and any printed materials at the airport. (FAC at ¶ 76).

Frontier's terms and conditions. Instead, Frontier lightly shaded the link to its mysterious COC, and did not require a box-checker prior to purchase to insure Plaintiffs' agreement to these hidden, material terms.[2] Neither can Frontier claim any similarity to the agents, in _Dennis v. Delta Air Lines, Inc._, 10-CV-974, 2011 WL 4543487 (E.D.N.Y. Sept. 29, 2011), because Frontier's purported "notice" is inconspicuous as compared to Delta's, and Frontier has failed to show that its COC was available for public inspection.[3] _Cf. Dennis_, 10-CV-974, 2011 WL 4543487, at *2. Frontier's purported "notice" is inconspicuously positioned in a way that makes sure it is easily overlooked as purchasers, including Plaintiffs, maneuvered to the final continue button. (FAC at ¶ 82, _Figure 13_).

The final button said, "Purchase & Agree," the term "agree" did not identify anything to which it referred. (FAC at ¶ 82, _Figure 13_). As such, a reasonable person would understand the "Purchase & Agree" button to mean they are "agreeing to purchase" the ticket for the aforementioned specific purchase price—not that there is a COC inside of which was a waiver of Plaintiffs' constitutional rights to bring class actions and to demand a trial by jury.

Frontier therefore failed to plainly label, in clear language, and "conspicuously notice" the waiver of Plaintiffs' right to bring a class action and to demand a jury trial.[4] In

---

[2] Delta's "Notice of Incorporate Terms of Contract" also stated that the customer had "the right to inspect the full text of each transporting carrier's terms at its airport and city ticket offices" and the "right, upon request, to receive free of charge the full text of the applicable terms incorporated by reference from each of the transporting air carriers." _See_ Exs. A-C to Aff. of Louis R. Martinez at 14, _Dennis_, No. 10-cv-973, ECF No. 22-3 (E.D.N.Y. Sept. 29, 2011).

[3] Because Frontier has not shown its COC was made publicly available, the question of whether Frontier provided "conspicuous notice" is not dispositive. _Cox_, 341 F.R.D. at fn. 21.

[4] Frontier mischaracterizes the allegations in the FAC. (Doc. 16, at 11). The FAC says nothing about Plaintiffs "acknowledging and agreeing" to the COC or Terms and Condition. Indeed, the "only time FRONTIER mentions its 'Terms and Conditions' and 'Contract for Carriage' is in the fine print intentionally and **inconspicuously** tucked under the consumer's 'billing information.'" (FAC at ¶ 82) (emphasis added). 1+1 does not equal potato.

fact, nowhere in Frontier's purchase process are either of those terms referenced for incorporation into Frontier ticket sale. These waivers qualify as "any terms incorporated by reference," as required by _Wolens_, _supra_. Emailing a COC to someone after a deal is done does not make whatever was in that email part of the previous deal.

Unlike _Covino_, the Plaintiffs here did not check "the relevant box" assenting to the COC (_i.e._, there was no box for Plaintiffs to check), and Frontier failed to make the COC available for public inspections. _Culliane v. Uber Tech, Inc._, 893 F. 3d 53, 63 n.10 (1st Cir. 2022) (explaining "clickwrap" contracts); _and see id._ at 62 (noting that "Uber chose not to use a common method of conspicuously informing users of the existence and location of terms and conditions: requiring users to click a box stating that they agree to a set of terms . . . before continuing to the next screen").  Nonetheless, the "conspicuous notice" issue is inappropriate at the pleading stage. And, even at summary judgment, factual disputes often exist as to whether an airline, such as Frontier, complied with the notice requirements of Part 253. For example, Spirit's summary judgment was denied, in _Cox v. Spirit Airlines, Inc._, due to a genuine issue of material fact regarding where Spirit did not appear to satisfy the requirements. _Cox v. Spirit Airlines, Inc._, 341 F.R.D. 349, 364-65 (E.D.N.Y. 2022).

On a motion to dismiss, the court tests the pleading and takes the Plaintiffs' allegations as true. Here, Plaintiffs have alleged that the COC was not conspicuously disclosed in the ticketing process, and Plaintiffs have stated these allegations through substantial factual recitations. Frontier is required by federal laws to conspicuously notice terms and conditions incorporated by reference **_and_** to make them available for public inspection at the respective airport. Plaintiffs allege Frontier has done neither. Frontier

fails to show why the FAC is facially deficient on the pleadings, and its Motion should be denied.

### B. *CLAIMS NOT EXPRESSLY PREEMPTED*.

Frontier fails to appreciate that it bears the burden of overcoming a presumption against ADA preemption. *Cipollone v. Liggett Group*, 505 U.S. 504, 516-18, (1992); and *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 312 (E.D.N.Y. 2005). Frontier merely raises ADA preemption without showing how the doctrine applies to this case and cites inapposite case law in doing so. For a law to be expressly preempted by the ADA, the state must enact or enforce a law that relates to airline rates, routes, or services. 49 U.S.C. § 41713(b)(1). *See Parise*, 141 F.3d 1463, 1465-66 (11th Cir. 1998). It is important to note that, Plaintiffs maintain that the motion to dismiss stage is not the venue for a factual dispute, and the Motion should be denied as to all preemption grounds. *Zamber v. American Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017). Nonetheless, Frontier fails to show express preemption for the reason stated below.

### 1. Claims Not Related To Prices Or Services Of Airlines.

Frontier generally contends, without support, that Plaintiffs' instant claims have a bearing on "price, route, or services," but utterly fails to show how.[5] Indeed, courts **have** in fact declined preemption. [6] Plaintiffs challenge Frontier's **outrageous** conduct, which

---

[5] "Priceline must show that enforcing the state laws on which plaintiff relies would have a significant effect on 'price, route or service of a carrier.'" *Chapman*, 2017 U.S. Dist. 162137, at *6.

[6] *See, e.g., Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338 (S.D. Fla. 2019) (unjust enrichment and FDUTP claims arising out of undisclosed receipt of a portion of fee not preempted); *Benjamin v. American Airlines, Inc.*, 32 F. Supp. 3d 1309 (S.D. Ga. 2014) (suits stemming from *outrageous conduct* on the part of an airline toward passenger will not be preempted under ADA); *Amerijet Intern., Inc. v. Miami-Dade County, Fla.*, 627 Fed. Appx. 755 (11th Cir. 2015) (county's living wage ordinance, which required service contractors to pay at least certain wage to their employees, did not have significant impact on services of air carriers, and thus not preempted by ADA); *Public Health Trust of Dade County, Fla. V. Lake Aircraft, Inc.*, 992 F.2d 291 (11th Cir. 1993) (state common law regarding aircraft safety not preempted by ADA); *Zamber*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017) (passenger stated FDUTPA and unjust enrichment claims and factual dispute prevented the ADA preemption question from being resolved at motion to dismiss

is not an ADA issue. *In re Nig. Charter Flights Contract Litig.*, at 470. As was the case in *Wolens*, Plaintiffs here are "challenging the airline's retroactive changes in the terms and conditions of [their purchase contract]." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). Plaintiffs' allegations must be accepted as true as opposed to Frontier's answers thereto. *See*, *e.g.*, *Barbakow*, 950 F. Supp. 1145, 1149 (no preemption where claims related to airline's provision of "cabin services"). The ADA is "concerned solely with economic deregulation, not with displacing state tort law." *Hodges v. Delta Airlines*, 44 F.3d 334, 337, 340 (5th Cir. 1995) (majority and dissent agreeing that "services" that are part of operations and maintenance not preempted). While the carry-on fee at Frontier's gates is outrageously high for no apparent reason, Plaintiffs' claims do not seek to regulate on the price or services; rather, they rest on the fact that Frontier took two bites from the same apple. Plaintiffs paid for their Personal Items at the ticket purchase, then Frontier made them pay again, at the gate.

## 2. Contract Claims Satisfy *Wolens* Exception.

Courts may enforce privately imposed contract terms. *Wolens*, 513 U.S. at 221. Indeed, it is not the law of the state, but the parties' agreement that allows a plaintiff to recover against an airline for breach of contract.[7] Frontier agrees that the Supreme Court

---

stage); *Parise*, 141 F.3d 1463 (11th Cir. 1998) (state law claims not preempted); *Mata v. Allupick, Inc.*, 2022 WL 1541294 (N.D. Ala. May 16, 2022) (slip copy) (not preempted even though related to "services"); *Barbakow v. USAir, Inc.*, 950 F. Supp. 1145 (S.D. Fla. 1996) ("state common-law tort remedies for tortious conduct of carrier in providing its choice of services" not preempted by the ADA); *Jamerson v. Atlantic Southeast Airlines*, 860 F. Supp. 21 (M.D. Ala. 1994) (state law negligence claims not preempted by ADA);  *Farina v. UPS*, 2002 U.S. Dist. LEXIS 14049 (S.D.N.Y. Jul. 30, 2002) (breach of contract claims not preempted, as not being a matter of state "public policies"); *Donkor v. British Airways, Corp.*, 62 F. Supp. 2d 963, 971-73, 1999 U.S. Dist. LEXIS 12503 (E.D.N.Y. Aug. 12, 1999) ("[b]reach of contract claims are not preempted by the [ADA]" and not "related to the provision of any service"); and *In re Nig. Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 470 (E.D.N.Y. 2007) ("The fraudulent and negligent conduct of which defendants are accused is better described as '*outrageous."* Thus, the ADA does not preempt plaintiffs' state law tort claims." (emphasis added)).

[7] The "terms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other

made such a holding. (Doc. 16, at 18-21). Frontier is quite familiar with this shoehorned argument. *See In re Frontier Airlines Litig.*, 559 F. Supp. 3d 1146 (D. Col. 2021). Frontier's position has been shot down before: "Plaintiffs' allegations that Frontier ha[d] duped or tricked passengers [was not considered to be] outside of plaintiffs' claim that Frontier [breached] the Contract." *Id.* at 1157.

A claim that "simply holds the parties to their agreements" is not preempted. *Shultz v. American Airlines, Inc.*, 2019 WL 3000448, at *2 (S.D. Fla. Jul. 10, 2019). The *Wolens* exceptions were expanded in a recent baggage claim case, holding an "adequately pleaded breach of contract claim […] is not preempted. *Hickcox-Huffman v. U.S. Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017). The *Wolens* exception is not affected by *Ginsberg*. *Id.* at 1062. And, thus, *Ginsberg* does not "close the door" on the *Wolens*' exceptions.[8] Likewise, the Eleventh Circuit holds that claims relating to airline operations or maintenance services are not preempted. *Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 Fed. Appx. 657, 662 (11th Cir. 2015).

Plaintiffs' claims here do not impact Frontier's "price, routes, or services" and are not related to "economic deregulation." *See Hodges*, 33 F. 3d at 337. This is not a new or novel obligation for Frontier. It is simple: Plaintiffs' Personal Items were ***not*** oversized, yet Frontier still charged them $99.00. The ADA does not regulate Frontier's agreements with Plaintiff, and Frontier has not shown otherwise. Plaintiffs do ***not*** seek to impose "greater

---

provision having force and effect of law within the meaning of [the ADA]." *Wolens*, 513 U.S. at 228-29 (citations omitted).
[8] In *Ginsberg*, the Supreme Court "went out of its way to note that 'respondent's claim of ill treatment by Northwest might have been vindicated if he had pursued his breach-of-contract claim after its dismissal by the District Court.' But he had not appealed that dismissal." *Hickcox-Huffman*, 855 F.3d at 1062 (internal citations omitted).

disclosure obligations on Frontier than required by the COC." (Doc. 16, at 20). This conduct therefore falls squarely within the exceptions to ADA preemption in _Wolens_.

### 3.   Unjust Enrichment and FDUTPA Claims Not Preempted.

The ADA does not preempt unjust enrichment claims. _Dolan v. JetBlue Airways Corp._, 385 F. Supp. 1338, 1344-46 (S.D. Fla. 2019). "Despite the expansive reach of the [ADA] preemption clause generally, the ADA's purpose of promoting competition within the airline industry is nonetheless circumscribed because air carriers compete in only a limited range of contexts, such as fares, routes, and timing, which constitute the bargained-for elements of its service." _Dolan_, at 1345 (citations omitted). Florida law unjust enrichment and FDUTPA claims arising out of undisclosed fees charged by an airline are not preempted by the ADA. _Dolan_, at 1346. Therefore, Plaintiffs' unjust enrichment and FDUTPA claims are not preempted by the ADA.

ADA preemption does **not** apply to state common-law tort remedies for tortious conduct of carriers in providing their choice of services. _Barbakow v. USAir, Inc._, 950 F. Supp. 1145 (S.D. Fla. 1996) (motion to dismiss denied). Therefore, traditional state law claims sounding in negligence are not preempted by the ADA. _Pipino v. Delta Airlines, Inc._, 2015 WL 4450039 (S.D. Fla. July 20, 2015) (motion to dismiss denied). _See_, _e.g._, _Psalmond v. Delta Air Lines, Inc._, 2014 WL 1232149 (N.D. Ga.) (remanding case because ADA did not preempt state law negligence and gross negligence claims); _Trinidad_, 932 F. Supp. at 526 (S.D.N.Y. 1996) (services of airline necessarily exclude an air carrier's common law duty to exercise ordinary care) (collecting cases); and _Moore v. Northwest Airlines, Inc._, 897 F. Supp. 313, 315 (E.D. Tex. 1995) (claims _arising out of boarding_

*procedures* not preempted, because the services complained of *were not boarding procedures in their economic or contractual dimensions*).

In <u>Dolan</u>, the airline colored the plaintiff's "FDUTPA and unjust enrichment claims as 'aris[ing] from JetBlue's website feature[ing] an offer of sale of optional travel insurance during the ticket purchasing process.'" <u>Dolan</u>, at 1344. "As such, reasons JetBlue, those claims 'run afoul of the ADA.'" <u>Id.</u> at 1344-45. "The Court [was] not persuaded." <u>Id.</u> at 1345. JetBlue's argument was "premised on its insistence that the complaint frames the offering of trip insurance, through JetBlue's website, as relating to the provision of the 'service of an air carrier.'" <u>Id.</u> at 1345. The <u>Dolan</u> court correctly applied the three-prong "service" test. <u>Id.</u> at 1345 (citing <u>Amerijet Intern., Inc.</u>, 627 Fed. App'x at 748-49). The <u>Dolan</u> court found that, "the first element here presents the greatest obstacle for JetBlue's preemption argument [...] because nothing in the record before the Court indicate that trip insurance falls within the 'limited range of services over which airlines compete." <u>Dolan</u>, at 1345. The <u>Dolan</u> ruling is another harsh reality that Frontier refuses to accept: "'the ADA's purpose of promoting competition within the airline industry,' is nonetheless circumscribed 'because air carrier compete in **only a limited range of contexts,** **e.g., fares, routes, timing,** etc., which constitute the bargained-for elements of its service." <u>Id.</u> (citing <u>Amerijet Intern., Inc.</u>, at 748) (internal cites omitted). The <u>Dolan</u> court held "that the offering of trip insurance, as part of the online ticket-purchasing process," was not a service over which the airlines compete. <u>Dolan</u>, at 1345.

> It may be a service that is offered by a particular airline, or even many airlines; but that does not necessarily make it an *air-carrier service* under the ADA. [...] Furthermore, if anything, from the face of the complaint, it appears that JetBlue's offering of trip insurance merely serves to extract

> extra revenue for the airline from customers who have already
> decided to purchase a ticket.

*Id.* at 1345-46. The FDUTPA claims were not preempted by the ADA. *Id.* at 1346.

Frontier's argument here is indistinguishable from JetBlue's, in *Dolan*, and is thus destined for the same fate. For instance, Frontier suggests that "consumers consider fees for ancillary services in making their flight arrangements" is a sound basis for preempting Plaintiffs' claims. (Doc. 16, at 18). While it is important to note that Frontier's position implicitly admits that the "service" at issue here is merely "ancillary" to "services of an air carrier," it still fails to show how this "ancillary" service could constrain Frontier in the way it offers Personal Items within the purchase contract. Moreover, the cases Frontier relies on do not support its position, because they involve services that are uniquely or inescapably tied to the airline industry itself.[9] *See*, *e.g.*, *Miller v. Delta Air Lines, Inc.*, 4:11-CV-10099-JLK, 2012 WL 11155138, at *3 (S.D. Fla. Apr. 5, 2012) (King, J.) (preempting state-law claims regarding the way an airline advertises its policies regarding lost, damaged, and delayed passenger baggage handled by the airline).

Frontier later suggests that *Miller* is "instructive" in the instant case, yet the plaintiff in that case seeks damages for a lost, damaged, or delayed bag. Unlike *Miller*, Plaintiffs' here have direct damages and injuries as alleged in their FAC, and do not seek any more relief than what is owed to them. The plaintiff in *Miller* wanted to tell Delta how to advertise and when. Plaintiffs here just want their money back and to be made whole for Frontier's misconduct. Frontier's Motion entirely fails to show a basis for suggesting that "Plaintiffs' are seeking to impose greater disclosure obligations on Frontier." (Doc. 16, at 20). Instead, Frontier just repeats different legal conclusions, then cites to inapposite case law,

---

[9] Frontier's parentheticals for these cases misrepresents grounds for the courts' decisions.

and moves on to the next unsubstantiated legal conclusion. (Doc. 16, at 20). And, again, Frontier attempts to mislead the Court into thinking Frontier was transparent about its "gotcha" tactics (Doc. 16, at 21), by ignoring the allegations in the FAC, which must be taken as true, that none of the Plaintiffs' bags were "oversized Personal Items." As such, Frontier cannot keep repeating the same storyline about its flawed reasoning on its transparency.

On the facts, as alleged, there is nothing about Plaintiffs' unjust enrichment and FDUTPA claims that are particular to a "service" over which the airline industry competes. As stated in *Dolan*, "it may be a service that is offered by a particular airline, or even many airlines; but that does not necessarily make it an *air-carrier service* under the ADA." *Dolan*, at 1346-45 (emphasis in original). Allowing people to carry personal items with them while traveling is not unique or limited to the airline industry. Train, buses, taxis, rideshares— the transportation industry in general—all allow personal items and carry-ons. The only thing unique about Frontier's "service" here is how blatantly fraudulent and manipulative it is. Therefore, Plaintiffs' unjust enrichment claims and FDUTPA claims are not preempted at the motion to dismiss stage.

C.     ***CLAIMS NOT IMPLIEDLY PREEMPTED***.

Plaintiffs' state law claims are not impliedly preempted by the FAA and have no meaningful relationship with any area that is "pervasively regulated by the federal government." (Doc. 16, at 21). Frontier suggests that Plaintiffs claims are like *Burbank v. Lockheed Air Term., Inc.*, where a **city ordinance** was found to be preempted because it sought to directly regulate airport noise. How that case is in any way similar to the instant case is unknown, and Frontier swiftly moves on to more legal conclusions without

foundation. (Doc. 16, at 21). Frontier also claims that Congress "plainly intended for the DOT alone to regulate airlines in this consumer protection area," but failed to define the purported "area." (Doc. 16, at 21). Plaintiffs' claims do not have anything to do with said "air commerce." Plaintiffs' bags are neither "checked" nor "carry-on baggage," as defined by Frontier, because they are not larger than 14"x18"x8" as alleged in the FAC, which must be taken as true. Frontier seemingly rehashes all of its failing arguments under "express" preemption again in its "implied" preemption defense, to no avail. (Doc. 16, at 22-23; *cf*. Doc. 16, at 13-21). In support of its flawed position, Frontier cites outdated case law, which is addressed more specifically below.

Frontier deliberately and intentionally concealed truth from Plaintiffs and others— whether the methods of Frontier's fraud were "an unfair or deceptive practice" is between Frontier and the DOT.  *See* <u>Moore v. Now Airlines, Inc.</u>, 897 F. Supp. 313, 315 (E.D. Tex. 1995) (negligence claim arising out of boarding procedures not preempted by ADA because the services complained of were not boarding procedures in their economic or contractual dimension).

Frontier has entirely failed to establish that it satisfied the "notice requirements […] for checked and carry-on baggage," under <u>14 C.F.R. §§ 254.4</u> and <u>254.5</u>. Instead, Frontier mischaracterizes regulations and case law in conclusory generalizations. For example, Frontier mischaracterizes its proffered arguments as "incontrovertible" federal rules:

> Airlines, ***inter alia***, must notify passengers on their websites and in e-ticket confirmations of potentially applicable baggage fees. . . . Ticket agents ***may*** refer consumers to the airlines' websites for specific baggage fee information. . . . These federal rules demonstrate ***incontrovertibly*** that the regulation of passenger baggage fees ***and related disclosures*** falls within DOT's ***exclusive*** authority.

(Doc. 16, at 22) (emphasis added; internal citations omitted). Frontier then cites to _In re Korean Air Lines_, 42 F. 3d at 694 (9th Cir. 2011), as though it was not dismissed on unrelated grounds. In reality, the plaintiffs' class action was dismissed because the plaintiffs in that case alleged that the airline engaged in **price** fixing in violation of California Business and Professional Code. _Id._ at 696-97. The court held that the claims were preempted by the ADA, because the unfair **competition** laws (antitrust and price fixing) were "related to a price" of an air carrier and the plaintiff-purchasers were attempting to regulate the manner by which foreign carriers set rates, or components of rates, for air transportation services. _Id_. The _Korean Air Lines_ case not only involved antitrust and price fixing, but it involved a state business and professional code that the plaintiffs were attempting to use to regulate the airline. _Id._ Plaintiffs in the instant case neither seek to regulate Frontier's prices, nor are they attempting to regulate the methods by which Frontier does whatever it does. This is true regardless of how unpleasantly Frontier characterizes Plaintiffs' class action claims.

Frontier argues "Plaintiffs' claims, at their core, are all based on allegedly unfair and deceptive practices in disclosing baggage fees." (Doc. 16, at 22). However, Frontier appears to have a grave misunderstanding of the allegations alleged against it, because Plaintiffs' claims "at their core" are Frontier's deliberate fraud, which is inherently unfair and deceptive to any reasonable consumer; and, in turn, Frontier's fraud is **the only** practice of any material effect in this class action. Fraud is an intentional and deliberate act—one that is separate and independent of the Frontier's (an airline) price, route, or services.[10]

---

[10] Plaintiffs welcome Frontier to establish that its fraudulent conduct, at its core, was (is) related to its "price, route or services."

"Services" necessarily exclude an airline's common-law duty to exercise ordinary care. _Trinidad v. Am. Airlines, Inc._, 932 F. Supp. 521, 526 (S.D.N.Y. 1996) (collecting cases). The Southern District of Florida recently held that FDUTPA claims (and unjust enrichment claims) were not preempted by the ADA. _Dolan_, _supra_. "Despite the expansive reach of the [ADA] preemption clause generally, the ADA's purpose of promoting competition within the airline industry is nonetheless circumscribed because of air carriers competing in only a limited range of contexts, such as fares, routes, and timing, which constitute the bargained-for elements of its service." _Dolan_, 385 F. Supp. 3d at 1345 (citing 49 U.S.C. § 41713(b)(1)). Therefore, the court held that the ADA did not preempt the JetBlue customer's unjust enrichment claim and FDUTPA claims "arising out of undisclosed receipt of a portion of fee charged for trip insurance sold on [JetBlue's] website," where the insurance did not fall within the "limited range of services over which airlines compete." _Dolan_, at 1345 (internal quotes omitted).

The Plaintiffs here are similar to the JetBlue passengers in that the claims arise out of issuance of an undisclosed fee from Frontier. Therefore, under _Dolan_'s rule, Plaintiffs' unjust enrichment and FDUTPA claims are **_not_** preempted, because the claims do not relate to the "bargained-for elements" of Frontier's airline services. The allegations in Plaintiffs' FAC, which should be taken as true, do not interfere with Frontier's "fares, routes, and timing." Frontier claims that "demanding a refund" for fraudulent fees "impact Frontier's baggage fee structure." (Doc. 16, at 17). However, the fact that Frontier has to refund a customer for its own intentional mistakes is not grounds for preemption. _See Dolan_, _supra_. Frontier also takes an ironic position that its baggage fee structure is "an area in which airlines routinely compete." (Doc. 16, at 17). Yet, although discovery is

imminent, a simple google search shows that Frontier is far from competitive, as just 1 of the 2 airlines that charge fees for carry-on bags.[11] And, the only way Frontier is winning this "routine competition" is if the goal is to charge the **most** for a carry-on bag.[12]

Frontier unpersuasively cites to _In re JetBlue Airways **Privacy** Litig._, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) in support of its argument in favor of preemption of Plaintiffs' FDUTPA claim. However, similar to its misleading citation of _In re Korean Air Lines Co., Ltd._, _supra_, Frontier again mischaracterizes the facts leading to the Eastern District of New York's decision. First, the case relates to privacy and data mining, and the plaintiffs' claims were based on the airline's transfer of their personal information to a data mining company **during the course of the provision of the service** of reservations and ticket sales. The court found that the collection and use of data obtained in the course of that service was reasonably related to the provision of that service. _In re Korean Air Lines Co._, 379 F. Supp. 2d at 316. "[T]he relevant activity for purposes of preemption is the provision of reservations and the sale of tickets to travel with JetBlue." _Id_. The plaintiffs in that case attempted to regulate JetBlue's privacy in ticketing and reserving travel for passengers. _Id._ The Plaintiffs here have materially different claims. Recall the sneaker store that sold shoes with no shoelaces then charged additional fee for shoelaces—it was reasonable to understand the price term to include the sneakers _and_ the laces that keep them on your

---

[11] https://www.skyscanner.com/tips-and-inspiration/guide-to-carry-on-bag-sizes-and-weight-restrictions.
[12] As stated before, the specific "price" of the carry-on bag is not material to any of Plaintiffs' claims. However, it does undermining Frontier's contention that its baggage fee structure is "an area in which [specifically Frontier] routinely competes." Of the 2 airlines that have carry-on fees, Frontier's "price" is approximately $25.00 more than its closest (and only) competitor. Shoehorning an argument into its reply to will not show that its $99.00 carry-on fee is a competitive "price" compared to Alaska Airlines (no fee), American Airlines (no fee), Delta Air Lines (no fee), Hawaiian Airlines (no fee), JetBlue (no fee), Southwest Airlines (no fee), and/or United Airlines (no fee).

feet. (Doc. 28, at 3). The same is true here. Plaintiffs' claims are not impliedly preempted, and Frontier's motion should be denied.

### D.   *BREACH OF CONTRACT CLAIMS SUFFICIENTLY STATED*.

Plaintiffs have sufficiently stated breach of contract claims, and Frontier's Motion should therefore be denied. Frontier argues that "somewhat ironically, Frontier's contract with Plaintiffs […] explicitly provides the very notice Plaintiffs allege Frontier failed to give them." (Doc. 16, at 24). However, the COC is not an "exhibit" to Plaintiffs' complaint, as suggested in the Motion (Doc. 16, at 24), and is not part of the purchase contract. The COC, and its questionable authenticity, are not at issue here; only the pleadings are to be analyzed. , with all allegations accepted as true and in a light favorable to Plaintiffs, to determine whether Plaintiffs' have sufficiently stated a claim for breach of contract. Instead of attacking Plaintiffs' pleadings, Frontier seeks to introduce extrinsic evidence that Plaintiffs specifically alleged to not be part of the purchase contract.[13] This is inappropriate, as a motion to dismiss is not an evidentiary hearing. Since Frontier does not attack the pleadings, its Motion should be denied.

### E.   *TORT CLAIMS NOT BARRED BY INDEPENDENT TORT DOCTRINE*.

Frontier seeks to have Counts III (fraudulent misrepresentation), Count V (negligence), Count VI (negligent misrepresentation), Count XI (strict liability) and Count XII (fraud) dismissed. Frontier's support for this contention is merely three sentences, each being a legal conclusion. (Doc. 16, at 24-25). It cites a single case, an unreported case that loosely addresses the supposed "independent tort doctrine," as grounds for

---

[13] Whether or not "several" Plaintiffs' "accepted "vouchers or refunds" from Frontier is not part of the FAC and is not an issue on a motion to dismiss. (Doc. 16, at 24). Frontier has failed to show how "vouchers or refunds" were even "accepted" by the "several" Plaintiffs, and to even begin to respond to such claims would open a pandora's box that would properly be addressed during discovery.

dismissing five separate counts in the FAC. (Doc. 16, at 24-25 (citation omitted)). Interestingly, the cited portion of that case is mostly dicta and barely addresses only misrepresentations. *Tiara Condo Ass'n, Inc. v. Marsh McLennan Cos.*, 110 So. 3d 399 (Fla. 2013) (Pariente, J., concurring). Plaintiffs' claims are nonetheless distinct from their contract claims, and Frontier fails to prove otherwise. Moreover, Plaintiffs are not barred by the Independent Tort Doctrine from pleading alternatives. (*See*, *e.g.*, FAC at ¶¶ 46, 49). Plaintiffs' factual allegations are organized under separate headings to show the distinctions. (*Cf.* FAC at pp. 6, 11, 23, 26, 29, 34, 37, 40, 43, 46, 49, 52, 55, and 60). Plaintiffs' specific counts make further distinct allegations. It is not clear how the aforementioned counts purportedly depend on each other, and Frontier fails to substantiate its position.[14] Frontier's motion should be denied on these counts as well.

### F. *UNJUST ENRICHMENT CLAIMS PLEADED IN ALTERNATIVE*.

Similar to Frontier's inadequacies regarding the independent tort doctrine, Frontier fails "to put flesh on [the] bones" of its argument against unjust enrichment. *McPherson*, at 995-96. Frontier merely argues that unjust enrichment cannot be pursued "if an express contract exists regarding the same subject matter" and capriciously calls it duplicative. (Doc. 16, at 25). Frontier has thus failed to adequately present an argument. There are three elements of an unjust enrichment claim under Florida law, none of which depend on whether or not an express contract exists. *City of Miami v. Bank of Am. Corp.*, 800 F.3d

---

[14] Inconspicuously, in a footnote, Frontier argues that the Rule 9(b) standard has not been met in Plaintiffs'' FAC. (Doc. 16, at 24, fn.15). However, Frontier's argument is woefully inadequate. Frontier merely states "for all claims arising from alleged fraud, Plaintiffs have failed to meet the heightened-pleading standard of Rule 9(b)." (Doc. 16, at 24, fn. 15). The argument is inadequate and inaccurate. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones" (internal quotations omitted)). Frontier also mentions "refunds or vouchers" in another footnote. This too is woefully inadequate (and inaccurate), and should not be considered by the Court.

1262, 1287 (11th Cir. 2015). Plaintiffs have pleaded all three here, and Frontier does not argue otherwise. Frontier's Motion should therefore be denied as to Count VII for unjust enrichment.

## IV.  HARRINGTON AND PINE'S CLAIMS ARE TIMELY.

There is no basis to dismiss the claims of any named Plaintiffs on statute-of-limitation grounds at this stage, on a motion to dismiss. _Cox v. Spirit Airlines, Inc._, 2023 WL 1994201, at *5 (E.D.N.Y. Feb. 14, 2023) (slip copy). Frontier seeks to have this Court enforce a term of a mysterious COC, the relevancy of which remains unknown. (Doc. 16, at 25-26). All named Plaintiffs have timely filed their claims within Florida's statute of limitations, and Frontier has failed to show why any other limitations period should apply. Therefore, Plaintiffs Harrington and Pine have timely filed and joined this class action. Nonetheless, and without waiving the foregoing, Plaintiffs Harrington and Pine's claims began tolling as soon as Plaintiff Hamad filed the initial class action complaint in this action on June 29, 2023. This means Harrington and Pine's statute paused within six (6) months of the date of injuries.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion (Doc. 16) be denied, in its entirety, as to all counts. Frontier's motion inadequately argues dismissal of Counts V, VI, XI, and XII and leaves the court to put flesh to bone; and never once mentions Count III. Therefore, Frontier has waived Rule 12(b)(6) grounds for same.

DATED: 12/28/2023                          Respectfully submitted,

                                           /s/ Mike Mann
                                           **MIKE MANN, ESQ.**
                                           Fla. Bar No. 1020249
                                           The Cochran Firm Orlando, LLC
                                           605 East Robinson Street, Suite 330
                                           Orlando, FL 32801
                                           Telephone (407) 271-8590
                                           Facsimile (407) 271-8059
                                           MMann@cochranfirmorlando.com
                                           Service@cochranfirmorlando.com
                                           *Attorney for Plaintiffs.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Clerk of this Court via this Court's CM/ECF e-filing portal and to the following parties or counsel of record, on this 28th Day of December 2023:

**HOLLAND & KNIGHT**
SUZANNE E. GILBERT, ESQ.
KRISTIN ROYAL, ESQ.
200 South Orange Avenue, Suite 2600
Orlando, FL 32801
Telephone (407) 425-8500
Facsimile (407) 244-5288
Suzanne.Gilbert@hklaw.com
Kristin.Royal@hklaw.com
*Attorneys for Defendant.*

                                           /s/ Mike Mann
                                           MIKE MANN, ESQ.