# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

AMIRA HAMAD, TAYLOR
HARRINGTON, SHARON PINE,
STEFANI GIMENEZ, MASON
SPRAGUE, TESS GAYNOR,
ADRIENNE KRAFT, JOANNE
HINRICHS, JOLENE YEADO,
CAMILLE CRAWFORD and BEATA
URBANOWICZ,

          Plaintiffs,

v.                                  Case No:   6:23-cv-1209-WWB-LHP

FRONTIER AIRLINES, INC.,

          Defendant

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT, STRIKE CLASS ALLEGATIONS AND JURY DEMAND, AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 15)** |
| **FILED:** | **October 23, 2023** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

| MOTION: | DEFENDANT'S MOTION TO COMPEL PLAINTIFF TAYLOR HARRINGTON'S CLAIMS TO ARBITRATION AND TO STRIKE HARRINGTON AS A CLASS REPRESENTATIVE WITH INCORPORATED MEMORANDUM OF LAW (Doc. No. 16) |
|---|---|
| FILED: | October 23, 2023 |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED AS MOOT**.

## I.    BACKGROUND.

On June 29, 2023, Plaintiff Amira Hamad filed this action on behalf of herself and a putative class, asserting four claims against Defendant Frontier Airlines, Inc. related to the charge of certain baggage fees by Defendant.   Doc. No. 1.   On September 29, 2023, Plaintiff, along with ten (10) additional above-named Plaintiffs, filed an amended complaint including the following claims on behalf of themselves and a putative class based on Defendant's practices regarding charging the baggage fees, each of which is brought under Florida law: (1) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"); (2) breach of contract; (3) fraudulent misrepresentation; (4) misleading advertising

in violation of Fla. Stat. § 817.41; (5) negligence; (6) negligent misrepresentation; (7) unjust enrichment; (8) breach of express warranty; (9) breach of implied warranty of fitness for a particular purpose; (10) breach of implied warranty of merchantability; (11) strict liability for misrepresentation; and (12) fraud.   Doc. No. 12.

In sum, Plaintiffs allege they each purchased a ticket to fly on Defendant's commercial airline.   Doc. No. 12 ¶¶ 1–11.   Defendant advertises that airfare includes one free "personal item" measuring 8"D x 18"W x 14"H, including handles, wheels, and straps.   *Id.* ¶¶ 24, 72.   However, Defendant fails to disclose that its bag sizers used at airports to measure the personal items are smaller than those advertised dimensions.   *Id.* ¶ 38.   Plaintiffs allege that Defendant incentivizes its employees to abuse enforcement of the "personal item" bag sizer, and provides bonuses to employees for charging "carry-on" prices for "personal items" at the gate.   *Id.* ¶ 49.   Each named Plaintiff alleges that he/she was charged a monetary fee at the airport gate for his/her personal item, despite the personal item meeting Defendant's stated dimensions.   *Id.* ¶¶ 30, 33, 45, 48, 114, 122, 137, 187, 195, 208, 216, 230, 251, 271, 293, 315, 336, 361.   Plaintiffs further allege that Defendant fails to disclose the amount of the monetary fees in advance on its

website, which is a higher fee at the gate than if charged with ticket purchase.   *Id.*
¶¶ 32, 39.[1]

Defendant has filed a motion to dismiss the amended complaint in its
entirety.   Doc. No. 16.   Specifically, Defendant argues that (1) Plaintiffs waived
any right to bring this action on behalf of a class and waived their right to demand
a jury trial pursuant to Defendant's Contract of Carriage ("COC"); (2) Plaintiffs'
claims are expressly preempted by the Airline Deregulation Act ("ADA"); (3)
Plaintiffs' claims are impliedly preempted by the Federal Aviation Act ("FAA"); (4)
Plaintiffs fail to state any viable claim; and (5) Plaintiffs Taylor Harrington's and
Sharon Pine's claims are time barred.   *Id.*   Plaintiffs filed their response in
opposition on December 28, 2023 (Doc. No. 38), and on January 11, 2024, Defendant
filed its authorized reply (Doc. No. 40).   Defendant has also separately filed a
Motion to Compel Plaintiff Taylor Harrington's Claims to Arbitration and to Strike
Harrington as a Class Representative (Doc. No. 15), to which Plaintiff Harrington
has responded (Doc. No. 31), and Defendant has replied (Doc. No. 46).

Both the motion to dismiss (Doc. No. 16) and the motion to compel arbitration
(Doc. No. 15) have been referred to the undersigned, and the matters are ripe for

---

[1] At the motion to dismiss stage, courts must assume "that all the [factual]
allegations in the complaint are true (even if doubtful in fact)."   *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) (citations omitted).

review.   Upon consideration, the undersigned will respectfully recommend that the Court grant the motion to dismiss in large part, deny it as to the breach of contract claims of nine (9) individual Plaintiffs, and thereafter deny the motion to compel arbitration as moot.

## II.   MOTION TO DISMISS (Doc. No. 16).

Defendant brings its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).   Doc. No. 16.   Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   While this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.* (quoting *Twombly*, 550 U.S. at 555).   A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   "A court's review on a motion to dismiss is limited to the four corners of the complaint.   A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims."   *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (internal quotation marks omitted) (first citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th

Cir.2002), then citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).

As discussed above, Defendant moves to dismiss the amended complaint on several bases, arguing:   (1) Plaintiffs waived any right to bring this action on behalf of a class and waived their right to demand a jury trial pursuant to Defendant's COC; (2) Plaintiffs' claims are expressly preempted by the ADA; (3) Plaintiffs' claims are impliedly preempted by the FAA; (4) Plaintiffs fail to state any viable claim; and (5) Plaintiffs Harrington's and Pine's claims are time barred.   Doc. No. 16; *see also* Doc. No. 40.   Each of Defendant's arguments, with Plaintiffs' responses in opposition (Doc. No. 38) will be addressed in turn.

A.    The COC.

As explained by another court in this Circuit regarding airline COCs:

An airline's "[c]ontract of [c]arriage is a federally regulated contract that governs the rights of the parties."   *Pons v. Arubaanse Luchtvaart Maatschappij*, No. 17-cv-22008, 2018 WL 2188477, at *3 (S.D. Fla. Mar. 29, 2018).   Contracts of carriage are regulated by the Federal Aviation Regulations, 14 C.F.R. § 1.1 *et seq.* ("FARs").   An airline's contract of carriage "applies to all scheduled direct air carrier operations in interstate . . . air transportation [and] applies to all contracts with passengers, for those operations, that incorporate terms by reference." 14 C.F.R. § 253.2; *see also id.* § 253.3 ("Passenger means any person who purchases . . . air transportation.").   An airline's contracted services "include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.   These matters are all appurtenant and necessarily included with the contract of carriage between the passenger . . . and the airline."   *Koutsouradis v. Delta Air Lines, Inc.*, 427

F.3d 1339, 1343 n.1 (11th Cir. 2005) (quoting *Hodges v. Delta Airlines, Inc.*, 4 F.3d 350, 354 (5th Cir. 1993)). . . .

The FARs expressly permit airlines to incorporate contracts of carriage into passengers' tickets or other written instruments. 14 C.F.R. § 253.4(a). These include "optional services that are available to a passenger purchasing air transportation." *Id.* § 399.85(d); *id.* § 399.84(c) (when offering tickets for passenger air transportation, air carriers may also "offer additional services in connection with air transportation" so long as "[t]he consumer affirmatively 'opt[s] in' (i.e., agree) to such a service and the fee for it before that fee is added to the total price for the air transportation-related purchase."). "[T]he term 'optional services' is defined as any service the airline provides, for a fee, beyond passenger air transportation. Such fees include, but are not limited to, charges for checked or carry-on baggage, advance seat selection, in-flight beverages, snacks and meals, pillows and blankets and seat upgrades." *Id.* § 399.85(d). The optional services fee "is added to the total price for the air transportation-related service." *Id.* § 399.84(c).

"[T]he carrier must prominently disclose on its website information on fees for all optional services that are available to a passenger purchasing air transportation . . . with a ***conspicuous*** link from the carrier's homepage directly to a page or a place on a page where all such optional services and related fees are disclosed." *Id.* § 399.85(d) (emphasis added). The FARs expressly state that if an airline fails to provide such "conspicuous notice" of incorporation, then the airline cannot enforce its contract terms with respect to such offers. *See id.* § 253.4(a) ("In addition to other remedies at law, an air carrier may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part."). Notably, the FARs do not expressly or impliedly prohibit class action waivers in the airlines' contracts of carriage. *See id.* § 1.1 et seq.

*Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1309–10 (S.D. Fla. 2020), *aff'd*, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021).

Defendant first moves to dismiss/strike from the amended complaint all class allegations and the demand for a jury trial because, according to Defendant, Plaintiffs waived any right to bring these claims pursuant to its COC.   Doc. No. 16, at 2, 9–14.   Defendant explains that all tickets for transportation are subject to Defendant's COC, and Defendant submits with its motion the COCs that were in effect from December 26, 2022 through June 22, 2023, to "cover all times when the Plaintiffs purchased their electronic tickets for travel on Frontier."   Doc. No. 14-1, at 2 ¶ 3; *see also id.* at 11–62.[2]

Plaintiffs repeatedly reference the COC in the amended complaint.   Doc. No. 12 ¶¶ 81–94.   Indeed, the amended complaint contains the following image from the online ticketing process:



*Id.* ¶ 82.

However, in response to the motion to dismiss, Plaintiffs argue that the COC is not enforceable because: (1) whether Plaintiffs were on notice of the COC is not

---

[2] Pinpoint citations to the record refer to the pagination provided by CM/ECF, rather than the internal pagination provided on the documents.

appropriately resolved at the motion to dismiss stage; (2) Plaintiffs did not agree to be bound by the COC, "a notion made up by [Defendant] in its motion," because "[t]he material terms of the parties' contract[s] do not incorporate the mysterious COC," and the amended complaint alleges that Defendant "did not provide a copy of the COC at the airport"; and (3) the online ticketing process did not require Plaintiffs to affirmatively "agree" to the COCs terms besides clicking a button stating "Purchase & Accept," and Defendant failed to conspicuously notice the waiver of the right to bring a class action or demand for jury trial.   Doc. No. 38, at 3–7.[3]

Given that the amended complaint explicitly addresses the COC, that the COC is central to Plaintiffs' claims,[4] and that Plaintiffs do not dispute the contents of the COC, *see* Doc. No. 38, the undersigned finds that the COCs, submitted as exhibits to Defendant's motion to dismiss, *see* Doc. No. 14-1, at 10–62, are properly considered in resolution of the motion to dismiss.   *See Roman*, 482 F. Supp. 3d at 1308 & n.4, *aff'd*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (considering COC in

---

[3] In their motion, Plaintiffs mistakenly state that the "final button" says "Purchase and Agree," Doc. No. 38, at 5, however the image copied into the amended complaint states "Purchase and Accept."   Doc. No. 12 ¶ 82.   The undersigned assumes Plaintiffs' recitation in the motion is a scrivener's error.

[4] Indeed, Plaintiffs bring a claim for breach of contract based on Defendant's baggage fee policies, which are set forth in the COC.   *See* Doc. No. 12.   The undersigned finds it hard to reconcile how Plaintiffs could argue that the COC is not central to their claims.   *Cf. Hahn v. JetBlue Airways Corp.*, No. 1:21-cv-6867-NRM-LB, Doc. No. 20 (E.D.N.Y Aug. 25, 2022) ("Hahn cannot sue for the breach of a contract he never entered.").

conjunction with motion to dismiss filed under Fed. R. Civ. P. 12(c)); *Hekmat v. U.S. Transp. Sec. Admin.*, 247 F. Supp. 3d 427, 434 n.2 (S.D.N.Y. 2017) ("We may consider the terms of plaintiffs' electronic tickets and JetBlue's Contract of Carriage because they are part of the contract that is at issue and therefore integral to the Amended Complaint."); *Miller v. Delta Air Lines, Inc.*, No. 4:11-CV-10099-JLK, 2012 WL 1155138, at *1 n.2 (S.D. Fla. Apr. 5, 2012) (considering "Conditions of Carriage" attached to motion to dismiss under similar circumstances because the "Conditions of Carriage" was incorporated by reference into the complaint).[5]

Moreover, contrary to Plaintiffs' contention, courts will consider substantive application of the terms of a COC at the motion to dismiss stage.  *See, e.g.*, *Roman*, 482 F. Supp. 3d at 1315, *aff'd*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021); *Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 147 (D. Mass. 2019); *Hekmat*, 247 F. Supp. 3d at 434; *Miller*, 2012 WL 1155138.   "Indeed, various courts have held that the

---

[5] Although Defendant has shown that the COC is properly considered at the motion to dismiss stage, Defendant submits a host of exhibits that go beyond the COC, and Defendant has not demonstrated by citation to legal authority or otherwise that the Court may properly consider such exhibits without effectively converting the motion to dismiss into a motion for summary judgment.  *See* Doc. No. 14.   Accordingly, the remainder of Defendant's exhibits are not further substantively addressed herein.   *Cf. Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-6016-Orl-31TBS, 2016 WL 3144103, at *3 (M.D. Fla. June 6, 2016), *aff'd*, 945 F.3d 1150 (11th Cir. 2019) ("The Court's decision to consider some of the exhibits attached to the Response does not convert the motions to dismiss into motions for summary judgment.   The exhibits come within the exception . . . .").   *See also Cavalieri v. Avior Airlines C.A.*, No. 17-22010-CIV, 2022 WL 19919671, at *2 (S.D. Fla. Nov. 14, 2022) (declining to consider the terms of the airline defendant's website on a motion to dismiss).

enforceability of a class action waiver should be resolved by way of a motion to dismiss and before discovery begins." *Roman*, 482 F. Supp. 3d at 1315, *aff'd*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997); *DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1345 (S.D. Fla. 2017)).

Further, Plaintiffs have failed to demonstrate, by citation to legal authority or otherwise, that requiring Plaintiffs to click "Purchase & Accept" in order to "agree[] to the Terms and Conditions and Contract of Carriage" set forth in hyperlinks, as opposed to checking a separate box indicating agreement to the contract terms, was required to demonstrate Plaintiffs' acceptance of the COC.[6]   *See* Doc. No. 12 ¶ 82;

---

[6] Although Plaintiffs suggest otherwise in response to the motion to dismiss, Doc. No. 38, at 5–6, the undersigned finds that, based on the authority cited herein, this is essentially a "modified" clickwrap agreement.   "Florida courts have recognized two main types of internet contracts: (1) clickwrap agreements: when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions[;] and (2) browsewrap agreements: when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process.   The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190, n.3 (S.D. Fla. 2021) (citation and quotation marks omitted), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022).   And to the extent that this issue is governed by Colorado law, more fully discussed below, *see also Hancock v. AT & T Co., Inc.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (under Colorado law, "Clickwrap is a commonly used term for agreements requiring a computer user to consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction." (citation and quotation marks omitted)).   "In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts." *Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022). The same is true under Colorado law.   *See, e.g.*, *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013).

Doc. No. 38, at 4–5.  *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (finding that, although not a "true pure-form clickwrap agreement," plaintiff "validly assented" to defendant's arbitration provision when plaintiff signed in, and three lines below the sign-in button, the website displayed the phrase, "By continuing past this page, you agree to our Terms of Use," and where plaintiff clicked the "Place Order" button to purchase tickets, and directly above the "Place Order" button, the website stated, "By clicking 'Place Order,' you agree to our Terms of Use," and "Terms of Use" was displayed in blue font and contained a hyperlink to defendant's terms); *Bombin v. Sw. Airlines Co.*, No. 5:20-CV-01883-JMG, 2023 WL 5832166, at *14 (E.D. Pa. Sept. 7, 2023) ("Southwest's presentation of clear hyperlinked terms on the same page as the 'Purchase' button and requirement of assent before purchase is similar in substance to clickwrap agreements routinely enforced in the Eastern District of Pennsylvania, as well as federal courts in Texas." (citations omitted)).  Neither in response to the motion to dismiss nor in the amended complaint do Plaintiffs allege or argue that they did not click the "Purchase & Accept" button to complete their purchases.  *See* Doc. Nos. 12, 38.[7]

---

[7] The amended complaint, the allegations of which the Court must accept as true, alleges only the general process for purchasing online tickets from Defendant directly, and that Plaintiffs "purchased . . . ticket[s] to fly FRONTIER."  *See* Doc. No. 12 ¶¶ 1–11, 50–94, 96, 118, 141, 191, 212, 234, 255, 275, 297, 319, 340.  In the motion to dismiss, Defendant suggests that some of the Plaintiffs purchased their airline tickets through third parties, and submits evidence in support.  Doc. No. 16, at 7–8 (citing Doc. Nos. 14-1 through 14-4).  As discussed above, however, Defendant has not established the propriety of

And although Plaintiffs allege that Defendant "does not require the consumer to read, review, or acknowledge" the COC, this is not dispositive.   *See, e.g.*, *Lee*, 817 F. App'x at 395 (cannot avoid contract terms on ground that the party seeking to avoid the contract failed to read it); *Hekmat*, 247 F. Supp. 3d at 435 (holding plaintiffs were on constructive notice of COC terms and it was irrelevant if they read them); *see also generally Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) ("In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts.   That Plaintiff may not have actually read the Terms before affirmatively assenting to them is not dispositive." (first citing *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05-cv-642-T-27TGW, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006), then citing *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011))).

Finally, in response to the motion to dismiss, Plaintiffs assert that "Plaintiffs allege that Frontier's agents . . . did not provide a copy of the COC at the airport," *see* Doc. No. 38, at 4, but as Defendant argues, *see* Doc. No. 40, at 3, no such allegation appears to be present in the amended complaint.   *See* Doc. No. 12.[8]   *See also Roman*,

---

considering such submissions on a motion to dismiss.   In any event, Plaintiffs do not argue that such facts, if true, would change the analysis.   *See* Doc. No. 38.

[8] Plaintiffs point to ¶ 76 in their amended complaint, but that allegation merely states that Defendant will charge an additional $20.00 if a consumer needs help at the airport "for things like buying bags, seats, checking in, or printing a boarding pass."   Doc. No. 12 ¶ 76.   *See also* Doc. No. 38, at 4, n.1.   This allegation nowhere mentions the COC.

482 F. Supp. 3d at 1315, *aff'd*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ("In this case, however, Plaintiffs do not allege that Spirit failed to make any term in its COC available for inspection at any airport or otherwise.   Thus, Plaintiffs argument in this regard is unavailing."); *cf. Covino*, 406 F. Supp. 3d at 153 (finding COC enforceable where "[a]s opposed to simply providing Covino with information as to how she could obtain a copy of the COC at the airport, Spirit provided Covino with immediate and direct access to the full terms of the COC free of charge via hyperlink on the booking page.").[9]

Thus, the undersigned finds that the COC applies in this case.   *See, e.g.*, *Roman*, 482 F. Supp. 3d at 1312, *aff'd*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ("In sum, Shortcut Security cannot be construed as a separate stand-alone service distinct from Spirit's COC.   It is an optional service offered only to, and in conjunction with, passengers who are parties to the COC . . . .").[10]   The question

---

[9]   Again, Defendant attempts to submit evidence in the form of affidavits demonstrating that it made its COC available for public inspection at airports.   Doc. No. 40, at 3–4.   But again, Defendant does not demonstrate by citation to legal authority or otherwise that it would be proper for the Court to consider such evidence on a motion to dismiss.   *See* Doc. Nos. 16, 40.   Even without such evidence, however, given that the amended complaint does not contain the allegation that Plaintiffs wish to effectively add by argument in response to the motion to dismiss, the undersigned finds Plaintiffs' argument unavailing.

[10]   In their opposition brief, Plaintiffs do not argue that the COC is unconscionable, rather they limit their arguments to whether sufficient notice was given to create a binding contract.   Doc. No. 38, at 3–7.   And on this point, outside of distinguishing the legal authority Defendant cites, Plaintiffs cite only four cases in support of their position that the COC is not enforceable.   *Id.*   But the undersigned does not find these cases compel a

then is whether the COC precludes Plaintiffs from bringing this action as a class or their demand for a jury trial.

The COC sets forth the baggage policies which Plaintiffs contend Defendant failed to adhere to in this case.   *See* Doc. No. 14-1, at 24–25, 51–52.   The COC also provides as follows:

> No Class Action – Any case brought pursuant to this Contract of Carriage . . . may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

---

different result.   *Cavalieri v. Avior Airlines C.A.*, No. 17-22010-CIV, 2022 WL 19919671, at *2 (S.D. Fla. Nov. 14, 2022) is not on point as to whether the plaintiffs were aware of/bound by the COC, as *Cavalieri* concerned whether the plaintiffs were on notice of terms stated on the airline's website, terms which the airline argued were incorporated into the parties' contract, which the court declined to rule on at the motion to dismiss stage, and which is not at issue here.

*Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349 (E.D.N.Y. 2022) concerned the airline's failure to wholly notice the charge of fees for airline carry-ons, and includes notice issues not present or alleged here.   *See, e.g., Cox*, 341 F.R.D. at 354 ("It is undisputed that Spirit did not provide a copy of its [COC] to consumers before they purchased a ticket via an [online travel agent]."), *id.* at 366 ("It is undisputed that no [online travel agent] included Spirit's terms on its website – by hyperlink or otherwise."). And *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) also involved facts not at issue here, in particular concerning how the arbitration provisions and terms of agreement links did not present like typical hyperlinks, used similar colors and fonts as other terms on the website, and did not contain other distinguishable features, such that the court found that the terms were not sufficiently reasonably conspicuous to provide notice.   In contrast, as noted in the amended complaint, the "Terms and Conditions" and "Contract of Carriage" links are set apart in a different colored font and clearly highlighted as hyperlinks.   Doc. No. 12, ¶ 82.

Finally, *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463 (11th Cir. 1998) concerned the issue of preemption, and whether the grounds for preemption could be derived from the defendant's answer to the complaint.   Plaintiffs fail to demonstrate how *Parise* supports their argument that the COC is unenforceable.   *See* Doc. No. 38, at 3.

> Time Limit for Action – No legal action may be brought by a passenger against Frontier unless commenced within 6 months from the date of the alleged incident.
>
> Choice of Law – This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law.   All right to trial by jury in any action, proceeding or counterclaim arising out of or in connection with this Contract of Carriage is irrevocably waived.

*Id.* at 35 § 21(I)–(K), at 61–62 § 21(I)–(K).   Applying Colorado law, *see id.*, as Defendant argues, the class action waiver is enforceable.   *See, e.g., Bonanno v. Quizno's Franchise Co., LLC*, No. CIV.A06CV02358CMAKLM, 2009 WL 1068744 (D. Colo. Apr. 20, 2009) (enforcing class action bar set forth in franchise agreement as to "comparatively simple fraud and consumer protection-type claims").   Indeed, in similar contexts, other courts have enforced class action waivers in Contracts of Carriage by way of a motion to dismiss.   *See, e.g., Roman v. Spirit Airlines, Inc.*, No. 20-13699, 2021 WL 4317318, at *1 (11th Cir. Sept. 23, 2021);[11] *Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d at 1308 n.4.[12]

---

[11] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."   *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

[12] As explained by the District Court in *Roman*:

> The [Federal Aviation Regulations] permit airlines to incorporate contracts of carriage into passengers' tickets or other written instruments, 14 C.F.R. § 253.4(a), and expressly provide that "[t]he incorporated terms may include .

The waiver-of-jury-trial provision presents a closer call.  Defendant brings this portion of its motion pursuant to Federal Rule of Civil Procedure 12(f), *see* Doc. No. 16, at 1, 9, 13–14, but it is not entirely clear that Rule 12(f) is the proper legal basis for Defendant's request.  *See Dynamic Motion Rides GMBH v. Universal City Dev. Partners Ltd*, No. 6:21-cv-752-RBD-LRH, 2021 WL 9086217, at *5 (M.D. Fla. Nov. 30, 2021) (collecting cases holding that a request to strike a jury demand should be made under Federal Rule of Civil Procedure 39, rather than Rule 12(f)).  And Defendant cites no legal authority factually similar to the case at bar, where Defendant seeks to enforce a waiver-of-jury trial provision set forth in an airline COC.  *See* Doc. No. 16, at 1, 9, 13–14.  Defendant cites only one case, which sets forth the general legal standards as follows:

> "[T]he right to a jury trial in federal courts is to be determined as a matter of federal law."  *Ford v. Citizens & S. Nat. Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991) (quoting *Simler v. Conner*, 372 U.S. 221, 222 (1963)).  That includes in diversity actions.  *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1577 (11th Cir. 1990).  The Seventh Amendment guarantees that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1373 (11th Cir. 2021) (quoting U.S. Const. amend. VII).  "A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary."  *Bakrac, Inc. v. Villager*

---

. . [c]laims restrictions," *id.* § 253.5(b)(2).  And although the FARs expressly prohibit "any contract of carriage provision containing a choice-of-forum clause[,]" *id.* § 253.10, they are silent regarding class action waiver provisions in the airlines' contracts of carriage, *see* 14 C.F.R. § 1.1 *et seq.*

*Roman*, 482 F. Supp. 3d at 1315, *aff'd* 2021 WL 4317318 (11th Cir. Sept. 23, 2021).

*Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006) (citing *Brookhart v. Janis*, 384 U.S. 1, 4-5 (1966)); *see also Alonso Cano v. 245 C & C, LLC*, No. 19-21826-CIV, 2020 WL 1304910, at *2 (S.D. Fla. Mar. 19, 2020) ("Contractual waivers of a person's right to a jury trial are routinely deemed enforceable, provided that they are knowing and voluntary." (citation omitted)).   However, a presumption against waiver exists.   *See Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995) ("[B]ecause the right to a jury trial is fundamental, 'courts must indulge every reasonable presumption against waiver.' " (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993))).

Courts consider several factors in assessing whether a contractual jury trial waiver was knowing and voluntary: (1) "the conspicuousness of the waiver provision"; (2) "the parties' relative bargaining power"; (3) "the sophistication of the party challenging the waiver"; and (4) "whether the terms of the contract were negotiable." *Bakrac*, 164 F. App'x at 824 (citations omitted).   A fifth factor courts have also considered is "whether the waiving party was represented by counsel." *Balchunas v. Bank of Am., N.A.*, No. 2:20-CV-14106, 2020 WL 4718435, at *2 (S.D. Fla. Aug. 13, 2020).   At any rate, no single factor is dispositive; rather, the ultimate inquiry is "whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Id.* (citation omitted).

*Johnston-Gebre v. IH4 Prop. Fla., L.P.*, No. 23-CV-61136, 2023 WL 6443096, at *2 (S.D. Fla. Oct. 2, 2023).   Defendant gives short shrift to each of these factors, by arguing that "Plaintiffs' waiver was knowing and voluntary," the jury-trial-waiver provision is "clear and conspicuous," there was no disparity in bargaining power, and Plaintiffs fail to allege that they wanted to consult with counsel before being bound by the provision.   Doc. No. 16, at 13–14.

Given that Defendant brought this motion under Rule 12(f), rather than Rule 39(a), that Defendant cites no legal authority on point clearly demonstrating that

the jury-trial-waiver provision is enforceable, and the dearth of legal analysis regarding same, the undersigned will respectfully recommend that Defendant's motion to dismiss be denied without prejudice in this regard.   *See, e.g., Ginsberg v. Silversea Cruises Ltd. (Inc.)*, No. 03-62141-CIV, 2004 WL 3656827, at *1–2 & n.2 (S.D. Fla. Mar. 18, 2004) (denying request to strike jury trial demand based on contractual waiver in a passenger ticket, noting that the defendant carried the burden of demonstrating waiver, that the issue of waiver is a question of fact rather than of law, and finding that the issue could not be decided on a motion to dismiss); *see also Hallmark Ins. Co. v. Maxum Cas. Ins. Co.*, No. 6:16-cv-2063-Orl-37GJK, 2017 WL 1065492, at *4 & n.6 (M.D. Fla. Mar. 21, 2017) (denying motion to strike jury demand for insufficient pleading and stating that the court will address the issue "if and when [it is] raised in an appropriate procedural posture").   This would not preclude Defendant from reasserting this argument at a later juncture by properly supported motion.   *See Ginsberg*, 2004 WL 3656827, at *2; *Hallmark Ins. Co.*, 2017 WL 1065492, at *4 & n.6; *see also Scott v. Gage*, No. 6:11-cv-1565-Orl-31DAB, 2012 WL 13103179, at *1 (M.D. Fla. Jan. 19, 2012) ("Parties have a great deal of latitude on the timing of motions to strike a jury demand because a court has the power to act *sua sponte* and act at any time, it follows that a court also has the discretion to permit a motion to strike a jury demand at any time even on the eve of trial." (citation omitted)).

In sum, the undersigned will recommend that, pursuant to the COC, Plaintiffs are barred from bringing this matter as a class action, but the undersigned will further recommend that the Court decline to strike the jury trial demand at this juncture.   As discussed more fully below, because the class action claims are barred by the COC, and in the amended complaint the Court's jurisdiction is based solely on minimal diversity of citizenship pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), a question exists as to whether the Court still has subject matter jurisdiction over this case.   *See, e.g.*, *Roman*, 2021 WL 4317318, at *2 ("[Plaintiffs'] claims fell within the scope of the class-action waiver, and thus that they were obligated to bring them individually.   As individual claims, the plaintiffs do not satisfy the statutory amount-in-controversy requirement and must be dismissed for lack of jurisdiction." (citing 28 U.S.C. § 1332(a)).   Thus, assuming the Court agrees with the recommendations made herein, the undersigned will also recommend that an Order to Show Cause issue regarding subject matter jurisdiction. [13]   The undersigned addresses each of Defendant's remaining arguments in turn.

---

[13] As discussed more fully below, there appears to be conflicting case law as to whether subject matter jurisdiction would continue to exist.

B. <u>Plaintiffs Harrington and Pine</u>.

Defendant argues that Plaintiffs Harrington and Pine's claims are time-barred pursuant to the COC, which provides that "[n]o legal action may be brought by a passenger against Frontier unless commenced within 6 months from the date of the alleged incident."   Doc. No. 16, at 25–26.   *See* Doc. No. 14-1, at 35 § 21(J), at 61–62 § 21(J).   *See also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 230 (1995) ("[T]he DOT requires carriers to give passengers written notice of the time period within which they may 'bring an action against the carrier for its acts.' (citing 14 C.F.R. § 253.5(b)(2)).

According to the amended complaint, Plaintiff Harrington purchased a ticket for a March 12, 2023 flight and was required to pay the $99.00 baggage fee at the airport on that date.   Doc. No. 12 ¶¶ 118, 122.   Plaintiff Pine's flight was on January 11, 2023, and she was required to pay the $99.00 fee for her personal item on that date.   *Id.* ¶¶ 234–35, 251.   Plaintiff Hamad alone initiated this action on June 29, 2023, Doc. No. 1, and Plaintiffs Harrington and Pine joined the lawsuit as Plaintiffs via the amended complaint filed on September 29, 2023, Doc. No. 12.

Defendant contends that because Plaintiffs Harrington and Pine did not file this lawsuit until September 29, 2023, their claims are time-barred under the terms of the COC.   Doc. No. 16, at 25–26.   Plaintiffs Harrington and Pine, on the other hand, contend that (1) this argument is not properly addressed on a motion to

dismiss (*i.e.*, again the same argument regarding application of the COC), (2) their claims were filed within Florida's statute of limitations, and (3) even if the COC applied, their claims are timely because their claims began to toll when Plaintiff Hamad initiated the case on June 29, 2023.   Doc. No. 38, at 20.

As discussed above, the undersigned finds that the terms of the COC apply. And the issue of the timeliness of Plaintiffs' claims is properly addressed on motion to dismiss.   *See, e.g.*, *Roman*, 482 F. Supp. 3d at 1315 (addressing six month temporal limitation on liability set forth in COC, finding same applies, and dismissing untimely claims); *Covino*, 406 F. Supp. 3d at 153–54 (finding that plaintiff passenger's claim was time barred under COC and granting Spirit's motion to dismiss); *Miller*, 2012 WL 1155138, at *4 ("The time for filing suit under Delta's Contract of Carriage is specifically authorized by law and DOT regulations. . . . Plaintiff cannot use Florida law to expand Delta's undertaking in the Contract of Carriage by exposing it to claims made within five years, rather than the one-year expressly provided in the Contract of Carriage.").   Thus, the question is whether Plaintiffs Harrington and Pine are entitled to equitable tolling, as they contend. The undersigned finds the equitable tolling argument problematic for several reasons.

First, Plaintiffs cite no legal authority in support of their argument that equitable tolling would apply in circumstances such as these, nor do they develop

their argument in any detail on the issue of equitable tolling.   *See* Doc. No. 38, at 20.   Such a perfunctory argument should be deemed waived.   *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." (citations omitted)); *see also, e.g., Morris v. Gov't Dev. Bank of Puerto Rico,* 27 F.3d 746, 750 (1st Cir. 1994) ("[A]ppellant, though hinting at the possible applicability of equitable tolling, has neither explicitly claimed the doctrine's benefit nor demonstrated an entitlement to it.   Any such argument is, therefore, waived.").

Second, under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), generally the statute of limitations may be tolled pending class action litigation. The Supreme Court held that after a denial of class certification, class members of the failed class could pursue their now untimely claims, individually, if those claims would have been timely at the outset of the class action.   414 U.S. at 552–54; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983).   However, where, as here, the issue of class certification has not yet been decided, and where Plaintiffs Harrington and Pine joined this suit by amended complaint raising different claims than those raised in the initial complaint, *compare* Doc. No. 1, *with* Doc. No. 12, it does not appear that application of that principle on the facts of this case would be appropriate.   *See generally Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983)

(J. Powell, concurring) ("It is important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit. . . .   Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations."); *Scott v. Illinois Bell Tel. Co.*, 169 F. Supp. 3d 845, 853 (N.D. Ill. 2016) ("*American Pipe* does not apply when the class claim and subsequent individual claim turn on the same factual allegations but assert different legal theories." (citing *In re Copper Antitrust Litig.*, 436 F.3d 782, 794 (7th Cir. 2006))); *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000) ("None of the judicial efficiency purposes of the doctrine is served by applying it to plaintiffs who voluntarily pursue their individual claims even before the court determines whether the class is viable.").[14]

---

[14] To the extent that Plaintiffs are effectively arguing that the amended complaint (Doc. No. 12), relates back to the initial complaint (Doc. No. 1), Plaintiffs have not demonstrated the propriety of same, given that the amended complaint adds several new claims and several new plaintiffs.   As explained by another court in this District:

> When an amended complaint merely adds new claims, relation back is permitted if these claims "arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading. . . ."   [Fed. R. Civ. P.] 15(c)(1)(B).   On the other hand, when an amended complaint seeks to add new parties, "the relation back rule is more stringent." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131 (11th Cir.2004).   When adding a new plaintiff, an amended complaint will relate back only if: (1) the provisions of Rule 15(c)(1)(B) are satisfied; (2) the amendment does not prejudice the defendant; and (3) the original complaint provided the defendant with adequate notice of the claims raised by the newly-added plaintiff.   *Harris v. Jones*, Nos. 3:06-cv-433-J-32MCR, 3:07-cv-30-J-32MCR, 2007 WL 2310784, at *2

Third, the undersigned recommends the Court conclude that the COC applies to this case.   Given that the COC applies, and thus so does the class action waiver, this action is not maintainable as a class, thus rendering any equitable tolling argument unpersuasive in this case.   *Cf. Mark v. Gawker Media LLC*, No. 13-CV-4347(AJN), 2016 WL 1271064, at *6 (S.D.N.Y. Mar. 29, 2016) (finding equitable tolling would not assist the plaintiffs where there was a waiver of class and collective action claims); *see also generally Anderson v. Mosaic Fertilizer LLC*, No. 8:19-cv-1225-MSS-AEP, 2021 WL 4762421, at *8 (M.D. Fla. Sept. 7, 2021) ("To apply the doctrine in the manner in which Plaintiffs suggest—*i.e.*, in every putative class action so as to be the equivalent to *American Pipe* tolling—would be an overbroad application of the remedy.").

Consequently, absent any legal authority supporting Plaintiffs' position on equitable tolling, the undersigned will respectfully recommend that the Court reject that argument, and find Plaintiffs Harrington and Pine's claims time-barred by application of the limitations period set forth in the COC.   *See, e.g.*, *Roman*, 482 F. Supp. 3d at 1315; *Covino*, 406 F. Supp. 3d at 153–54; *Miller*, 2012 WL 1155138, at *4.

---

(M.D. Fla. Aug. 8, 2007); *Hughes v. American Tripoli, Inc.*, No. 2:04-cv-485-FtM-29DNF, 2007 WL 2010786, at *2 (M.D. Fla. July 6, 2007).

*Reasoner v. All Seasons Pool Serv., Inc.*, No. 6:06-cv-1819-Orl-19DAB, 2007 WL 4326808, at *3 (M.D. Fla. Dec. 7, 2007) (footnote omitted).   Plaintiffs address none of these considerations.   *See* Doc. No. 38, at 20.   *See also* Doc. No. 12.

C.    Express Preemption under the Airline Deregulation Act ("ADA").

"Under the ADA, 'a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of an air carrier that may provide air transportation under this subpart.'   This pre-emption clause serves the ADA's broader goal of 'promot[ing] maximum reliance on competitive market forces' as opposed to state regulation in shaping the contours of the airline industry."   *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1253–54 (11th Cir. 2003) (emphasis in original) (first quoting 49 U.S.C. § 41713(b)(1), then quoting *Wolens*, 513 U.S. at 230)).

However, in *Wolens*, the Supreme Court held that "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves."   513 U.S. at 222. Specifically, the court "d[id] not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."   *Id.* at 228; *see also id.* at 232–33 ("The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a

term the airline itself stipulated.").   In analyzing breach of contract claims under this exception, courts are confined "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."   *Id.* at 233; *see also Roman v. Spirit Airlines, Inc.*, No. 19-CIV-61461-RAR, 2019 WL 9093467, at *2 (S.D. Fla. Oct. 20, 2019) ("[T]he Supreme Court has carved out a narrow exception to the ADA's preemption provisions specifically for suits alleging that an airline breached its obligations under a contract.").   "Plaintiff[s'] claims therefore only survive preemption if they fall within the narrow contours of the *Wolens* exception." *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856, 864 (N.D. Ill. 2021).[15]

As an initial matter, the parties dispute whether the baggage fees charged by Defendant relate to "airline rates, routes, or services" such that ADA preemption would apply.   Doc. No. 16, at 15–18; Doc. No. 38, at 7–8.   The ADA "expresses a broad preemptive intent that encompasses state enforcement actions 'having a connection with or reference to airline "rates, routes, or services."'"   *Bailey v. Rocky Mountain Holdings, LLC*, 889 F.3d 1259, 1262 (11th Cir. 2018) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).   The term "related to" is broadly

---

[15] The undersigned notes that although Plaintiffs point out that there is generally a presumption against preemption, Doc. No. 38, at 7, the Eleventh Circuit has held that "the ADA's pre-emption clause is properly afforded an extremely broad scope."   *See Branche*, 342 F.3d at 1257.

construed.   *See Branche*, 342 F.3d at 1258–59 (broadly construing terms "related to" "service" as set forth in ADA, which "includes not only the physical transportation of passengers, but also the incidents of that transportation over which air carriers compete").

Here, Defendant cites persuasive authority suggesting that Plaintiffs' claims regarding baggage fees "relate to" airline "price."   Doc. No. 16, at 16–17 (citing, *inter alia*, *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 85-90 (1st Cir. 2011) (holding that curbside baggage check-in fee related to "price" under the ADA); *Roman v. Spirit Airlines, Inc.*, No. 19-CIV-61461-RAR, 2020 WL 3303084, at *3-4 (S.D. Fla. Apr. 14, 2020) (finding that Shortcut Security fee "invariably impacts the base fare" charged by the airline, and therefore related to "price" under the ADA triggering preemption of FDUTPA claim)).   *See also Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 850–51 (11th Cir. 2022) ("Plaintiffs concede, as they must, that their breach of contract action due to Defendant charging fees for passage beyond those included in the ticketed fares 'related to' the price charged by Defendant.").

Defendant also cites authority demonstrating that the claims regarding baggage fees "relate to" airline "services."   Doc. No. 16, at 17–18 (citing, *inter alia*, *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343 (11th Cir. 2005) (adopting definition of "'service' for ADA preemption purposes to include boarding procedures and baggage handling"); *Brown v. United Airlines, Inc.*, 720 F.3d 60, 64

(1st Cir. 2013) ("[S]tate law that penalizes the imposition of baggage-handling fees at airports directly regulates how an airline service is performed and how its price is displayed to customers." (citation and quotation marks omitted)); *see also Amerijet Int'l, Inc. v. Miami-Dade Cty., Fla.*, 627 F. App'x 744, 748–49 (11th Cir. 2015) ("[T]hree elements must be present for a particular service to be deemed a 'service' for purposes of the ADA: (1) it must fit within the limited range of services over which airlines compete; (2) it must be bargained for; and (3) the bargained-for exchange must be between an air carrier and its consumers." (citing *Branche,* 342 F.3d at 1258)).   Plaintiffs cite no contrary authority in response.   Doc. No. 38, at 7–8.[16]

---

[16] Plaintiffs cite *In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d 447, 470 (E.D.N.Y. 2007) for the proposition that Defendant's challenged conduct was "outrageous," but that case concerned whether ADA preemption applied to state tort claims regarding "an airline's total and indefinite refusal to transport ticketed passengers, [and] its selection of a contracting carrier that engages in the same conduct," which claims the Court found were not preempted, as that conduct was not "reasonably necessary to the provision" of the services.   No such similar allegations are made here.   *See* Doc. No. 12.   Plaintiffs also cite to the *Wolens'* exception to the express preemption rules, but that exception, which is more fully addressed below, does not support Plaintiffs' claim that the baggage fees imposed by Defendant do not relate to "price" or "services."   *See* 513 U.S. at 222.   Plaintiffs further cite *Barbakow v. USAir, Inc.*, 950 F. Supp. 1145, 1149 (S.D. Fla. 1996), which found that "claims by private passengers to recover for injuries proximately caused by an air carrier's breach of its duty of reasonable care in providing cabin services are not preempted by the ADA."   Again, no such similar allegations exist here, and *Barbakow* did not address whether baggage fees relate to "price" or "services."   To the contrary, *Barbakow* held that ADA preemption "refers to regulation of the type, quality or method of services and not to state common law remedies for tortious conduct by the carrier in providing its choice of services."   *Id.* at 1149.   Likewise, *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995), concerned a personal injury claim which the court held did not significantly affect airline services, not a claim regarding baggage fees.

Upon review, the undersigned concludes that Plaintiffs' claims regarding baggage fees imposed by Defendant "relate to" Defendant's "prices" or "services."

Next, the parties dispute whether Plaintiffs' claims are expressly preempted by the ADA, and/or whether they satisfy the *Wolens* exception.   Doc. No. 16, at 19–21; Doc. No. 38, at 8–10.   As discussed above, Plaintiffs bring twelve (12) claims in the amended complaint, which include only one claim of breach of contract and a few claims for breach of warranty, with the remainder of the claims alleging unjust enrichment and state statutory or common law tort claims.   Doc. No. 12.

"For a law to be expressly preempted by the ADA, a state must "enact or enforce a law that relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them." *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1465–66 (11th Cir. 1998) (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1431 (7th Cir. 1996)).   ADA preemption is not limited to statutes or regulations; the Supreme Court has interpreted the phrase "other provision having the force and effect of law" to include state common law claims.   *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014).   However, "[t]he ADA does not . . . preempt a 'state-law-based court adjudication' . . . concerning a contractual obligation 'voluntarily' undertaken by an air carrier."   *Bailey*, 889 F.3d at 1268 (citations omitted).   "Therefore, an air carrier may bring a state action to enforce the terms of a contract, whether express or

implied, or the person with whom an air carrier has contracted may bring a breach-of-contract action . . . so long as the action concerns voluntary commitments and not state-imposed obligations." *Id.* (citing *Wolens*, 513 U.S. at 232–33, 237); *see also Seymour v. Cont'l Airlines, Inc.*, No. 09-526-ML, 2010 WL 3894027, at *7 (D.R.I. June 11, 2010), *report and recommendation adopted*, 2010 WL 3894023 (D.R.I. Oct. 4, 2010) ("Identifying Defendant's . . . policy as a 'service,' . . . does not complete the preemption analysis.").

Here, as Plaintiffs argue, Doc. No. 38, at 8–10, it appears to the undersigned that Plaintiffs' breach of contract claim satisfies the *Wolens* exception. Indeed, "Plaintiffs pled a breach of contract claim that seeks to enforce the voluntary agreement of the parties." *See Cavalieri*, 25 F.4th at 851. Specifically, Plaintiffs allege that Defendant states that its passengers are permitted one "free personal item" included in the airfare, with the dimensions of 14" x 18" x 8," including handles and wheels. Doc. No. 12 ¶¶ 72, 106–07, 127, 177, 197, 222–23, 242–43, 263–64, 285–86, 307–08, 326, 353–54. Plaintiffs further allege that their respective personal items satisfied these restrictions; yet Defendant failed to comply with its contractual obligation to permit that luggage to be carried on to the airline free of charge, and instead, imposed an additional monetary fee at the gate. *Id.* ¶¶ 45, 48, 114, 122, 137, 187, 195, 208, 230, 251, 271, 293, 315, 336, 361.

"Accordingly, Plaintiffs' [breach of contract] claim seeks recovery solely for the alleged breach of Defendant's own, self-imposed undertaking regarding the price charged for transport."   *See Cavalieri*, 25 F.4th at 851 ("[T]erms and conditions airlines offer and passengers accept are privately ordered obligations and thus do not amount to a State's 'enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of § 1305(a)(1).   Accordingly, 'the ADA permits state-law-based court adjudication of routine breach-of-contract claims' like this one." (citing *Wolens*, 513 U.S. at 228–29, 232)); *see also Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) ("If carriage of Plaintiffs' carry-on items was within the scope of Spirit's contractual obligations, then the ADA does not preempt Plaintiffs' breach-of-contract claims." (citing *Wolens*, 513 U.S. at 232)); *In re Frontier Airlines Litig.*, 559 F. Supp. 3d 1146, 1157 (D. Colo. 2021) (breach of contract claim not preempted by ADA, and "the Court [did] not consider plaintiffs' allegations that Frontier has duped or tricked passengers outside of plaintiffs' claim that Frontier did not perform the Contract" as seeking to enlarge any contractual obligations); *Roman*, 2019 WL 9093467, at *3 ("Because Plaintiffs raise a routine breach of contract claim—namely that Spirit failed to provide Plaintiffs with the benefit of their bargain as it relates to Shortcut

Security—the Court finds that Counts I, II, and III are not preempted by the ADA.").[17]

However, outside of the breach of contract claim, and with the exception of the breach of warranty claims,[18] the remainder of Plaintiffs' claims appear to be

---

[17] In arguing that Plaintiffs' breach of contract claim fails to satisfy the *Wolens* exception, Defendant relies on several cases that are distinguishable.  For example, in *Koutsouradis*, 427 F.3d 1339, the district court notably denied the motion to dismiss on the breach of contract claim, and the issue was before the Eleventh Circuit on the grant of judgment as a matter of law during trial.  Moreover, the claim in *Koutsouradis* did not relate to explicit terms of the COC as here, but rather the way the plaintiff was treated regarding certain baggage handling procedures.  *See Koutsouradis*, 427 F.3d at 1341–42.

In *Alatortev v. JetBlue Airways, Inc.*, No. 3:17-CV-04859-WHO, 2018 WL 784434 (N.D. Cal. Feb. 7, 2018), unlike here, the breach of contract claim was not premised solely on the terms of the COC, and the court found that because the breach of contract claim depended on "enlargement or enhancement" of the COC, the claim was preempted by the ADA. Specifically, the breach of contract claim was based on a "lost" checked bag, but the COC said only that Defendant would "endeavor" to deliver baggage on time, the luggage was not actually lost but instead delayed, and the COC did not require that luggage be placed on the same flight as the passenger, as the plaintiff suggested.  *See Alatortev*, 2018 WL 784434, at *5, 6.

Likewise, in *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103, 1106 (W.D. Wash. 2011), "Plaintiff's claims for a refund of the baggage fee as a result of [an] alleged breach of contract employ[ed] external state law to enlarge an existing agreement regarding baggage transport," and in *Miller v. Delta Air Lines, Inc.*, No. 4:11-CV-10099-JLK, 2012 WL 1155138, at *3 (S.D. Fla. Apr. 5, 2012), the plaintiff sought "to pursue claims that [went] far beyond the obligations stipulated to by Delta in the Contract of Carriage."

Here, in contrast, the COC explicitly says that passengers will be permitted "one free personal item" of certain dimensions, and Plaintiffs allege that Defendant failed to honor this provision even though their personal items met the dimensions.  *See* Doc. Nos. 12, 14-1, at 24, 35–36.  Defendant's attempt to distinguish *Cavalieri*, 25 F.4th 843, is unpersuasive, as the facts in *Cavalieri* are more akin to this case than Defendant suggests, and Defendant apparently overlooks the allegation in the amended complaint that Plaintiffs' personal items did *not* exceed the dimensions Defendant sets forth in the COC. *See* Doc. No. 16, at 20–21.

[18] *See Wolens*, 513 U.S. at 228 ("We do not read the ADA's preemption clause . . . to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking

expressly preempted by the ADA.   Indeed, each of the remaining claims (FDUTPA violation (Count 1), fraud claims (Counts 3 and 12), statutory misleading advertising (Count 4), negligence (Counts 5 & 6), unjust enrichment (Count 7), and strict liability misrepresentation claims (Count 11)) are premised on the same basic facts as the breach of contract claim—Defendant's allegedly false representations that certain personal items would be permitted on the airline free of charge, they were not, and Plaintiffs were required to pay a fee therefor—claims which, as stated above, "relate to" Defendant's rates or services.   *See* Doc. No. 12 ¶¶ 394–400, 416–525.   *See also Morales*, 504 U.S. 374 (guidelines regarding airline fare advertising enforced through consumer protection laws expressly preempted by ADA); *Wolens*, 513 U.S. at 228 (consumer fraud claims preempted by ADA); *Bailey*, 889 F.3d at 1272 (FDUTPA claim related to airline's price expressly preempted by ADA); *Brown*, 720 F.3d at 70 ("The *Wolens* exception is very narrow, and [P]laintiffs' unjust enrichment . . . claims [Count 7] fall outside its confines." (citing *Buck,* 476 F.3d at 36–37)); *Seklecki v. Ctr. for Disease Control & Prevention*, 635 F. Supp. 3d 15, 25 (D. Mass. 2022) (deceptive and misleading trade practices and fraudulent misrepresentation claims

---

recovery solely for the airline's alleged breach of its own, self-imposed undertakings."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992) ("[T]he requirement[s] imposed by an express warranty claim are not imposed under State law, but rather imposed *by the warrantor*." (emphasis in original) (quotation marks and footnote omitted)).   That is not to say that Plaintiffs have adequately alleged any valid breach of warranty claim, however, as more fully discussed below.

preempted by ADA); *Hekmat*, 247 F. Supp. 3d at 432 ("Plaintiffs' tort claims also satisfy the second prong of the preemption test.   Plaintiffs' . . . negligence . . . claims [Counts 5 & 6] challenge the adequacy of [Defendant's] baggage handling policies and procedures and therefore affect[ ] the airline service directly." (citations omitted)); *Seymour*, 2010 WL 3894027, at *10, *report and recommendation adopted*, 2010 WL 3894023 (D.R.I. Oct. 4, 2010) (common law negligence claim expressly preempted by ADA because it "would effectively operate to compel the airline to alter its late check-in boarding policy to accommodate those with physical disabilities in contravention of the Deregulation Act").[19]

---

[19] The undersigned notes that courts have found exceptions for other state law claims in situations not present here, such as anti-discrimination and retaliation laws, and at least one case for prevailing wage laws.   *See DiFiore*, 646 F.3d at 87 (collecting cases). Further, "[n]egligence claims have been upheld against airlines for injuries occurring during airline operations themselves, and the Ninth Circuit has even held possible a claim that might entail a rearrangement of cabin seating to reduce the risk of deep vein thrombosis." *See id.* & n.8 (collecting cases).   Again, such circumstances are not present here, where Plaintiffs claims are premised solely on the imposition of allegedly unwarranted baggage fees.   *See also* Doc. No. 12.   *Cf. Lyn-Lea Travel v. Am. Airlines*, No. 96-CV-2068, 1997 WL 33441244, at *9 (N.D. Tex. Dec. 2, 1997) ("None of the plaintiff's claims are for physical injuries or damage to property that resulted from the operation or maintenance of an aircraft." (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995))).   Nor do Plaintiffs allege any federal claims in this case.   *Cf. Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1221 (11th Cir. 2014) (ADA does not expressly preempt federal claims nor impliedly preempt RICO claims).

Plaintiffs argue that authority exists demonstrating that their unjust enrichment, FDUTPA, and common law tort claims are not expressly preempted by the ADA, but the undersigned does not find such authority persuasive based on the allegations of the amended complaint.   *See* Doc. No. 38, at 7 & n.6, 10–13.   *See also* Doc. No. 12.   In *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338 (S.D. Fla. 2019), for example, the court found that trip insurance was not a "service of an air carrier," and thus unjust enrichment and

_____

FDUTPA claims were not preempted, unlike the present case, where baggage fees clearly "relate to" an airline price or service.   And *Pipino v. Delta Air Lines, Inc.*, No. 15-CV-80330-KAM, 2015 WL 4450039 (S.D. Fla. July 20, 2015), *Psalmond v. Delta Air Lines, Inc.*, No. 1:13-CV-2327-JEC, 2014 WL 1232149 (N.D. Ga. Mar. 25, 2014), *Trinidad v. Am. Airlines, Inc.*, 932 F. Supp. 521 (S.D.N.Y. 1996), and *Barbakow v. USAir, Inc.*, 950 F. Supp. 1145 (S.D. Fla. 1996), each involved personal injury tort claims, which are not at issue here, and which would not be preempted by the ADA.

    While Plaintiffs cite *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1302 (S.D. Fla. 2017) for the proposition that the express preemption inquiry should not be resolved at the motion to dismiss stage, the undersigned finds that case distinguishable because it involved third-party travel insurance, which the court did not find necessarily "related to" an airline service, while here, it is clear to the undersigned that the baggage fee claims at issue relate to an airline "service."   And in any event, as demonstrated by the authority cited herein, numerous courts have resolved the express preemption inquiry by way of a motion to dismiss.

    In a footnote, Plaintiffs also cite various cases for the proposition that "courts have in fact declined preemption."   Doc. No. 38, at 7 n.6.   But again, each case is readily distinguishable and therefore unpersuasive.   *Benjamin v. Am. Airlines, Inc.*, 32 F. Supp. 3d 1309, 1321 & n.5, 11 (S.D. Ga. 2014) notes simply that personal injury claims and "routine claims for breach of contract involving self-imposed obligations are not preempted by the Airline Deregulation Act," and that the ADA does not preempt federal claims, statements with which the undersigned has no quarrel.   *Amerijet Int'l, Inc.*, 627 F. App'x 744, is also factually inapplicable, as the case involved a living wage ordinance, where the court found that cargo handling between Amerijet and other airlines did not "relate to" an airline "service," because it did not implicate the "carrier-end user relationship."   627 F. App'x at 749–51.   Likewise, *Public Health Trust of Dade Cty., Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291 (11th Cir. 1993), involved claims for strict liability and negligence stemming from the design of a seatbelt which allegedly enhanced injuries, which claims the Eleventh Circuit found did not relate to airline "rates, routes, or services."   *Parise*, 141 F.3d 1463, involved an age discrimination claim, which is not at issue here.   *Mata v. Allupick, Inc.*, No. 4:21-CV-00865-ACA, 2022 WL 1541294 (N.D. Ala. May 16, 2022), involved preemption under the Federal Aviation Administrative Authorization Act, and wrongful death claims arising out of a car accident involving a tractor-trailer.   And *Barbakow*, 950 F. Supp. 1145, *Jamerson v. Atl. Se. Airlines*, 860 F. Supp. 821, 824 (M.D. Ala. 1994), and *Donkor v. Brit. Airways Corp.*, 62 F. Supp. 2d 963, 972 (E.D.N.Y. 1999), each related to personal injury claims not connected to any airline "services."   The remaining cases cited by Plaintiffs relate to the non-preemption of breach of contract claims, which, as demonstrated by the recommendations made herein, the undersigned agrees would not be preempted by the ADA.   *See Farina v. UPS (In re EVIC Class Action Litig.)*, 2002 U.S. Dist. LEXIS 14049, *37 (S.D.N.Y. July 31, 2002), *Donkor*, 62 F. Supp. 2d 963.

Accordingly, the undersigned will recommend that these remaining claims (FDUTPA violation (Count 1), fraud claims (Counts 3 and 12), statutory misleading advertising (Count 4), negligence (Counts 5 & 6), unjust enrichment (Count 7), and strict liability for misrepresentation claims (Count 11)) be dismissed as preempted by the ADA.[20]

D.   Implied Preemption Under the Federal Aviation Act ("FAA").

"Courts have held that although the FAA does not expressly preempt state regulation of air safety, the intention of the FAA was to create regulation and stability through the FAA alone, and therefore the FAA created implied preemption." *Carvajal v. Am. Airlines, Inc.*, No. 10-CV-23269-WMH, 2011 WL 13273367, at *2 (S.D. Fla. Nov. 10, 2011) (citing *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007).   Nonetheless, "[j]ust as with [Defendant's] express preemption argument, its implied preemption argument only works to the extent that

---

[20] If the Court disagrees and finds that these claims may proceed, Defendant persuasively argues that the tort claims would be barred by the independent tort doctrine in any event, as all of the claims are premised on the same basic facts.  *See* Doc. No. 16, at 24–25.  *See also* Doc. No. 12, at 66–85; *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584-Orl-22TBS, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) ("Fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." (citation omitted)).  However, it does not appear that the question of whether the unjust enrichment claim is duplicative is appropriately resolved at this stage.  *See, e.g.*, *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1325–26 (M.D. Fla. 2018) ("[S]ummary judgment, rather than a motion to dismiss, is the proper vehicle for resolution if the claims ultimately prove to be duplicative.").

[Plaintiffs] seeks to enlarge the scope of the parties' agreement.    Otherwise, there is no state-imposed obligation to find impliedly preempted."    *See Alatortev v. JetBlue Airways, Inc.*, No. 3:17-CV-04859-WHO, 2018 WL 784434, at *7 (N.D. Cal. Feb. 7, 2018); *Brown*, 720 F.3d at 65 (stating that preemption provisions of the FAA and the ADA stand *in pari materia* (citing *DiFiore*, 646 F.3d at 86 n.4)).    *See also Branche*, 342 F.3d at 1253 ("[W]here a legislative enactment contains an express pre-emption provision, we typically do not consider the issue of implied pre-emption; our primary task is only to determine whether the state law in question falls within the scope of the statute expressly promulgated by Congress." (citing *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001))).

Upon consideration, as to the remaining claims for breach of contract and breach of warranty, the undersigned will decline to recommend that the Court find these claims impliedly preempted by the FAA at this juncture.    *See Wolens*, 513 U.S. at 232–33 ("The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated.").[21]

---

[21] Notably, in its motion to dismiss, Defendant points only to the FAA's regulation of the manner in which airlines notify passengers of baggage fees, which is not the sole basis for Plaintiffs' claims in this case (*i.e.*, Plaintiffs also allege that Defendant failed to allow a "free personal item" despite its representations to the contrary).    *Compare* Doc. No. 12, *with* Doc. No. 16, at 21–22.    *Cf. Ray v. Am. Airlines, Inc.*, No. 08-5025, 2008 WL 2323923,

E.      <u>Failure to State a Claim</u>.

Based on the analysis set forth above, the remaining claims in this case are for breach of contract (Count 2), breach of express warranty (Count 8), breach of implied warranty of fitness for a particular purpose (Count 9), and breach of implied warranty of merchantability (Count 10).

As to Count 2, "[t]he elements of a breach-of-contract claim under Florida and Colorado law are the existence of a valid contract, the plaintiff's performance under the contract, the defendant's material breach of the contract, and resulting damages to the plaintiff."   *Kasparov v. Schnorenberg*, No. 3:15-cv-1093-J-32PDB, 2016 WL 8846261, at *8 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 2016 WL 9049968 (M.D. Fla. Sept. 6, 2016) (citing *Sulkin v. All Fla. Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. Dist. Ct. App. 2006); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).[22]

---

at *10 (W.D. Ark. June 2, 2008) ("[T]here are currently no regulations in place which address the health and safety of air carrier passengers during lengthy delays on the ground, and the Plaintiff's claims based on such are not [impliedly] preempted [under the FAA].").   In its motion, Defendant also points to no other case dismissing *a breach of contract claim* due to implied preemption under the FAA.   *See* Doc. No. 16, at 22–23.

[22] As discussed above, the COC specifies that Colorado law applies.   Doc. No. 14-1, at 35 § 21(K), at 61–62 § 21(K).   The undersigned also provides citation to Florida law in an abundance of caution given Plaintiffs' argument that the COC does not apply, and given that the amended complaint alleges "breach of contract under Florida's common law." *See* Doc. No. 12, at 67.   In any event, it does not appear that the analysis would be different under Colorado versus Florida law.

Defendant argues that Plaintiffs fail to state a breach of contract claim because the amended complaint alleges Defendant's failure to provide adequate notice regarding its baggage fee policies, which is refuted by the evidence it submits in support of the motion to dismiss, including the COC.  Doc. No. 16, at 23–24. Defendant further argues that Plaintiffs fail to establish damages because "several Plaintiffs accepted refunds or vouchers," again pointing to evidence submitted in support of the motion to dismiss but not referenced in nor attached to the amended complaint.  *Id.* at 24.

But lack of notice is not all the amended complaint alleges.  Instead, Plaintiffs allege that Defendant states that its passengers are permitted one "free personal item" included in the airfare, with certain dimensions, Plaintiffs' respective personal items satisfied these restrictions, but Defendant failed to comply with its contractual obligation to permit those personal items to be carried on to the airline free of charge, and instead, imposed an additional monetary fee at the gate.  *See* Doc. No. 12 ¶¶ 45, 48, 72, 106–07, 114, 122, 127, 137, 177, 187, 195, 197, 208, 222–23, 230, 242–43, 251, 263–64, 271, 285–86, 307–08, 315, 326, 336, 353–54, 361, 401–15.  These allegations appear sufficient to state a breach of contract claim.  *See Cavalieri v. Avior Airlines C.A.*, No. 17-22010-CIV, 2022 WL 19919671, at *1 (S.D. Fla. Nov. 14, 2022) ("[T]he allegations in Plaintiffs' Complaint are sufficient to state a plausible claim of breach of contract.  First, Plaintiffs plead the existence of a

contract where they allege that the contract entered into between the Parties consists of Defendant's Contract of Carriage and the passenger tickets' terms.  Second, Plaintiffs plead a material breach where they allege that Defendant required them to pay an additional 'Exit Fee' despite having paid the advertised ticket prices. Third, Plaintiffs plead damages where they allege that Defendant forced them to pay $80 before being allowed to board their separate flights to Venezuela.").

Regarding damages, as Plaintiffs argue in response, Doc. No. 38, at 18 n.13, "[w]hether or not 'several' Plaintiffs' accepted 'vouchers or refunds' from Frontier is not part of the [amended complaint], and is not an issue on a motion to dismiss." *Cf. Adacel, Inc. v. Adsync Techs., Inc.*, No. 6:18-cv-1176-Orl-78EJK, 2020 WL 8641582, at *2 (M.D. Fla. May 18, 2020) ("Plaintiffs' arguments would require this Court to go beyond the four corners of the Amended Counterclaim and assess the adequacy of Defendant's damages evidence, which this Court cannot do on a motion to dismiss." (citing *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, No. 6:07-cv-1503-Orl-19KRS, 2009 WL 10671220, at *3 (M.D. Fla. Mar. 31, 2009) (holding that "it is premature and inappropriate" in ruling on a motion to dismiss "for the Court to make factual findings or rule on the adequacy of [the plaintiff's] evidence of damages")).

However, as to the breach of warranty claims (Counts 8 through 10), the amended complaint fails to state any claim for relief, as Plaintiffs do not allege the

sale of any goods.   Doc. No. 12 ¶¶ 479-505.   *See generally Marjam Supply Co. of Fla.,*

*LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *7 (S.D. Fla. Apr. 23, 2018)

("A cause of action for breach of warranties requires a showing of 1) *facts in respect*

*to the sale of the goods*, 2) identification of the types of warranties created, 3) facts in

respect to the creation of the particular warranty, 4) facts in respect to the breach of

warranty, 5) notice to seller of breach and 6) the injuries sustained by the buyer as

a result of the breach." (emphasis added) (citation omitted)); *Armadillo Distrib.*

*Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.*, No. 8:12-cv-1839-T-

36EAJ, 2015 WL 12732417, at *4 (M.D. Fla. Apr. 28, 2015) ("To state a cause of action

for breach of an express warranty under Florida's [Uniform Commercial Code,

'U.C.C.'], the plaintiff "must allege: (1) *the sale of goods*; (2) the express warranty; (3)

breach of the warranty; (4) notice to seller of the breach; and (5) the injuries

sustained by the buyer as a result of the breach of the express warranty." (citation

omitted) (emphasis added)); *see also Airlines Reporting Corp. v. Travel Servs.*

*Clearinghouse*, 778 F. Supp. 1141, 1144 (D. Kan. 1991) (guaranty regarding processing

of airline tickets did "not involve the sale of goods, or any other transaction

governed by the [Uniform Commercial Code]"); *cf. Alcatraz Media, Inc. v. Medieval*

*Times Georgia, Inc.*, No. 1:10-CV-00380-JOF, 2011 WL 13213913, at *7, n. 10 (N.D. Ga.

Mar. 30, 2011), *order clarified*, 2011 WL 13213872 (N.D. Ga. June 8, 2011) ("[W]hile a

ticket or voucher is a tangible thing, the ticket itself merely represents what is being

sold here: admission to a castle and the entertainment services Defendants provide. Therefore, the predominant purpose of the contract is to buy and sell Defendants' services, not the ticket itself, and the UCC does not apply."); *Rossetti v. Busch Ent. Corp.*, 87 F. Supp. 2d 415, 418 (E.D. Pa. 2000) ("[T]he purchase of an admission ticket to an amusement park that enables a patron to ride attractions does not constitute a 'good' pursuant to the UCC.").[23]

Plaintiffs do not provide any authority to the contrary, and in fact, do not respond to this argument at all in their opposition brief.   Doc. No. 38. Accordingly, given the above-cited authority and the lack of any argument to the contrary, the undersigned will respectfully recommend that the Court dismiss Counts 8, 9 and 10 of the amended complaint for failure to state a claim.

## III.   MOTION TO COMPEL ARBITRATION (Doc. No. 15).

Given that Plaintiff Harrington's claims appear to be time-barred pursuant to the COC, and that Plaintiff Harrington's claims are due to be dismissed on this basis, the undersigned will respectfully recommend that the motion to compel arbitration related to Plaintiff Harrington (Doc. No. 15) be denied as moot.   *See also* Doc. No. 46, at 1–2 (making clear that the request to compel Plaintiff Harrington's

---

[23] To the extent that Colorado law would apply to the warranty claims, Colorado has also adopted the Uniform Commercial Code, which, "[b]y its express terms, . . . applies only to "transactions in goods," and "does not apply to services."   *See Janke v. Brooks*, No. 11-CV-00837-REB-BNB, 2012 WL 1229891, at *2 (D. Colo. Apr. 11, 2012).

claims to arbitration was alternative relief sought to dismissal); *see also, e.g.,* *Davenport v. Fresh Start Advisors, LLC*, No. 1:11-CV-02319-SCJ, 2012 WL 13008739, at *2 (N.D. Ga. Oct. 12, 2012) ("Auer, Gass, and Paolini only plead *in the alternative* that the claims against them be compelled to arbitration.   Because this Court finds Plaintiff has failed to state a claim against Auer, Gass, and Paolini, their argument to compel arbitration is moot."); *cf. Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1235 (11th Cir. 2018) ("Like any other contractual right, [t]he right to arbitrate can be waived." (citation and quotation marks omitted)); *Adams v. Lashify, Inc.*, No. 6:23-cv-243-PGB-DCI, 2023 WL 5573822, at *5 (M.D. Fla. Aug. 29, 2023) ("[I]t is well-settled that 'prosecution or defense of a lawsuit on issues subject to arbitration'—that is, merits issues—waives the claimed right to arbitrate." (citation omitted)).[24]

## IV.    SUBJECT MATTER JURISDICTION.

As discussed above, the amended complaint bases the Court's jurisdiction solely on minimal diversity of citizenship pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).   *See* Doc. No. 12.   However, given the terms of the COC, the undersigned recommends that this matter may not proceed as a class

---

[24] In the event that the Court disagrees with the analysis set forth herein regarding finding the motion to compel arbitration moot, the undersigned alternatively recommends that the Court remand the matter to the undersigned for issuance of a Report on the merits of the motion to compel arbitration (Doc. No. 15).   Should that be the case, the undersigned would further recommend that the Court decline to rule on the merits of the motion to dismiss as it relates to Plaintiff Harrington as set forth in this Report, pending resolution of the motion to compel arbitration.

action.   *See* Doc. No. 14-1, at 35 § 21(I), at 61–62 § 21(I).   And based on the other recommendations made herein, if adopted by the Court, it appears that this case will proceed by nine (9) named Plaintiffs alone with state law breach of contract claims for approximately $99.00 each.   *See* Doc. No. 12.   Thus, the remaining claims provide no other basis for the Court to exercise jurisdiction, under federal question, diversity of citizenship, or otherwise.   *See* 28 U.S.C. §§ 1331, 1332(a).

This does not end the analysis, however.   The Eleventh Circuit has held that CAFA jurisdiction "continues to survive even after later events mean[] there would be no class" in a case filed directly in federal court.   *See Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271-1273 (11th Cir. 2016) (relying on *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) (stating that "jurisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction.").   On the other hand, the Eleventh Circuit held that a class action filed under CAFA "can be dismissed for lack of jurisdiction if those claims contain frivolous attempts to invoke CAFA jurisdiction or lack the expectation that a class may be eventually certified."   *Id.* at 1271.   The Court stated that "[i]n this way, CAFA jurisdiction is analogous to conventional diversity jurisdiction, which is not destroyed by post-filing changes to party citizenship, but only by discovery

that the parties were not actually diverse at the time the operative complaint was filed." *Id.* (footnote and citations omitted).

Since *Wright*,[25] and on similar facts to the present case, courts in this District have found that dismissal of class claims due to a class action waiver in a COC, resulting in individual cases that otherwise do not satisfy jurisdictional requirements under 28 U.S.C. § 1332(a), results in a lack of subject matter jurisdiction. *See Roman*, 2021 WL 4317318, at *2 ("Because the contract of carriage references and thereby governs optional services, and because those optional services include the Shortcut Security service, the plaintiffs' claims concerning that service were all brought pursuant to the contract of carriage. It follows that their claims fell within the scope of the class-action waiver, and thus that they were obligated to bring them individually. As individual claims, the plaintiffs do not satisfy the statutory amount-in-controversy requirement and must be dismissed for lack of jurisdiction." (citing 28 U.S.C. § 1332(a)); *Roman*, 482 F. Supp. 3d at 1316 ("[W]ithout their class allegations—this Court lacks subject matter jurisdiction over their individual breach of contract claims. Indeed, Plaintiffs' individual damages are only $6.00. Consequently, it is facially apparent from Plaintiffs' allegations that

---

[25] Prior to *Wright* but post-*Vega*, in at least one unpublished opinion, the Eleventh Circuit held that "absent certification as a class action, the district court lacks subject matter jurisdiction over [the plaintiff's] individual claim." *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 862 (11th Cir. 2012).

their individual amount in controversy is well below the jurisdictional minimum of $75,000 required to establish diversity jurisdiction." (record citations omitted)).

Based on this authority, the undersigned will respectfully recommend that an Order to Show Cause issue to Plaintiffs to address whether subject matter jurisdiction under CAFA, or under any other jurisdictional basis, exists/continues to exist.

## V.     RECOMMENDATIONS.

For the reasons discussed herein, it is respectfully **RECOMMENDED** that the Court:

1.     **GRANT in part and DENY in part** Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, Strike Class Allegations and Jury Demand (Doc. No. 16).

2.     **DISMISS** the claims brought by Plaintiffs Taylor Harrington and Sharon Pine as time-barred under the terms of the COC.

3.     **DISMISS** the class claims from the amended complaint as barred under the terms of the COC.

4.     **DISMISS** Counts 1, 3, 4, 5, 6, 7, 11 and 12 of the amended complaint as preempted by the ADA.

5.     **DISMISS** Counts 8, 9, and 10 of the amended complaint for failure to state a claim.

6.      **DENY** Defendant's Motion to Dismiss (Doc. No. 16) in all other respects, **DECLINE** to strike the jury trial demand at this juncture, and **PERMIT** the case to proceed on the individual breach of contract claims as to the nine (9) remaining Plaintiffs (Count 2).

7.      **ISSUE** an Order to Show Cause to Plaintiffs as to whether subject matter jurisdiction continues to exist.

8.      **DENY as moot** Defendant's Motion to Compel Plaintiff Taylor Harrington's Claims to Arbitration and to Strike Harrington as a Class Representative (Doc. No. 15).

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.   Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 19, 2024.

_____
LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy